UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 99-10371-RGS

UNITED STATES OF AMERICA

v.

JAMES J. BULGER

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR RECUSAL

July 17, 2012

STEARNS, D.J.

Defendant's motion for recusal will be <u>DENIED</u>. There is a long-standing presumption of judicial impartiality in the federal courts of the United States, including those of the First Circuit.[1] This presumption is not overcome by specious and unsupported factual allegations. *See In re United States*, 158 F.3d 26, 35 (1st Cir. 1998) ("A party cannot cast sinister aspersions, fail to provide a factual basis for those

---

[1] Defendant's statement in his Memorandum to the contrary (*id.* at 8) is in error. *See Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 640 (1st Cir. 1996), citing *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (The defendant "bumps up against the historic presumption that judges are 'men [and women] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' The presumption of judicial impartiality cannot be trumped by free-floating invective, unanchored to specific facts.").

aspersions, and then claim that the judge must disqualify [him]self because the aspersions, *ex proprio vigore*, create a cloud on [his] impartiality."). "If a party could force recusal of a judge by [false] factual allegations, the result would be a virtual 'open season' for recusal." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (citation omitted).

The rules governing recusal are well established. Recusal is required where a judge's impartiality might reasonably be questioned, *see* 28 U.S.C. § 455(a), or where actual bias exists, *see* 28 U.S.C. § 455(b) (and its sub-parts). Defendant's motion is predicated on § 455(a), as well as § 455(b)(1), § 455(b)(3), and § 455(b)(5)(iv).

Recusal under § 455(b)(1) requires a "determination of bias/prejudice *in fact*." *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir. 1990) (emphasis in original). Recusal is necessary "[w]here [the judge] has a *personal* bias or prejudice concerning a party, or *personal* knowledge of disputed evidentiary facts concerning the proceeding." *See* § 455(b)(1) (emphasis added). Defendant's argument under § 455(b)(1) depends on theories of "guilt by institutional association" and imputed knowledge. The first theory is not recognized under (b)(1), while the second is legally and factually unsustainable, as will be explained.

Under § 455(b)(3), a judge must recuse himself "[w]here he has served in government employment and in such capacity participated as counsel, advisor or

material witness concerning the merits of the particular case in controversy." Here, there is no allegation by defendant (nor could there be) that as an Assistant United States Attorney (AUSA), I was involved in the prosecution of any case in which he was a subject or target. *See United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988) (the statute requires "a *specific* showing that the judge was previously involved with a case while in the U.S. Attorney's office that he or she is later assigned to preside over as a judge") (emphasis in original).[2]

Moreover, defendant's allegation of vertical imputation or vicarious liability pursuant to § 455(b)(3) is based on a misreading of *United States v. Arnpriester*, 37 F.3d 466 (9th Cir. 1994). The vertical theory applies only to United States Attorneys, and not to subordinate supervisors (unless they have actually participated in the

---

[2] "In § 455(b)(3) . . . Congress clearly and specifically addressed the effect of prior government service on a judge's recusal obligations. Before enacting that law in 1974, Congress carefully studied the issue, including obtaining guidance from the then-recently amended ABA Code of Judicial Conduct. See H. R. Rep. No. 93-1453 (1974), as reprinted in 1974 U.S.C.C.A.N. 6351. In the statute, Congress chose to draw the recusal line for prior government employment at participation in the proceeding or expression of an opinion concerning the merits of the particular case in controversy. It bears emphasis, moreover, that Congress chose the 'personal-participation' rule for recusal based on prior *government* employment while simultaneously enacting a different and far broader 'associational' rule for recusal based on prior *law firm* employment. *See* 28 U.S.C. § 455(b) (2)." *Baker & Hostetler LLP v. U.S. Dep't. of Commerce*, 471 F.3d 1355, 1357-1358 (D.C. Cir. 2006) (emphasis in original).

investigation or prosecution of a defendant).³ *See United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999) (finding defendant's reliance on *Arnpriester* unwarranted where the judge was not *the* United States Attorney but an *Assistant* United States Attorney during the relevant time period, and although for much of that time was the Chief Criminal Assistant, she did not have supervisory power over the section of the office that investigated the defendant). *See also United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were former AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification.") .

The test under § 455(a) for determining whether a judge's impartiality might reasonably be questioned is

> [w]hether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*United States v. Voccola*, 99 F.3d 37, 42 (1st Cir. 1996) (citations omitted). As elaborated by the Court of Appeals:

> [a] charge of partiality must be supported by a factual basis. [citations omitted]. Although public confidence may be as much shaken by publicized inferences of bias that are false as by those that are true, a

---

³ The vertical theory also presumes that (unlike this case) there is some underlying conduct with respect to a defendant to actually impute to the U.S. Attorney as the chief prosecuting officer for his or her district.

4

judge considering whether to disqualify himself must ignore rumors, innuendos, and erroneous information published as fact in the newspapers. . . . [D]isqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias.

*In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).

No permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on unfounded innuendo concerning the *possible* partiality of the presiding judge. Indeed, "[a] trial judge *must* hear cases unless some reasonable factual basis to doubt the impartiality of the tribunal is shown by some kind of probative evidence."

*El Fenix de Puerto Rico v. M/Y JOHANNY*, 36 F.3d 136, 140 (1st Cir. 1994), quoting *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979) (emphasis in *El Fenix de Puerto Rico*).

Defendant's recusal motion is based, for the most part, on a historically mistaken premise. Contrary to defendant's assumption, in the 1970's and 1980's, the United States Attorney's Office was separate from the New England Organized Crime Strike Force (OCSF). *See United States v. Salemme*, 164 F. Supp. 2d 49, 67 (D. Mass. 1998) (stating the same in considering a similar recusal motion).[4] The strike forces were

---

[4] Implicit in the motion is the further assumption that a former AUSA by virtue of his or her position is so permanently resistant to criticism of his or her former office and colleagues as to be unable to act impartially as a judge whenever accusations of

created by Attorney General Robert Kennedy in 1966 as autonomous units with jurisdiction over organized crime investigations and prosecutions, reporting directly to the Department of Justice.[5] *See* Note, The Strike Force: Organized Law Enforcement v. Organized Crime, 6 Colum. J.L. & Soc. Probs. 496, 509-521 (1970). The strike forces

> eventually expanded to have offices in scores of cities. The strike force attorneys reported directly to the Department, not to the local U.S. Attorney, and they were seen as a serious blow to the autonomy of the U.S. Attorneys and their control of federal law enforcement in their districts. The tension between strike forces and U.S. Attorneys' Offices was well known, and the strain was especially pronounced in districts with the greatest tradition of autonomy.

Sara Beale, Rethinking the Identity and Role of United States Attorneys, 6 Ohio St. J. Crim. L. 369, 398 (2009). In 1990, then Attorney General Richard Thornburgh, who

---

official misfeasance on their part are leveled by a party to pending litigation. Even "if one may assume the survival of some residue of gratitude [toward one's former office] after such a period, it is beyond contemplation that such gratitude would be of the weight necessary to cause a judge to jettison his impartiality and, in open court day after day, to violate his deepest professional and ethical commitments as a judge." *In re United States*, 666 F.2d at 696. Moreover, this assumption would disqualify eight of the eleven Boston-based judges in this district, as well as hundreds of district court judges nationally who have served as an AUSA and/or Department of Justice lawyer at some point during their careers.

[5] Kennedy's aim was to bypass J. Edgar Hoover's FBI and the existing U.S. Attorneys' Offices, neither of which he believed were sufficiently committed to investigating and prosecuting organized crime. *See* James B. Jacobs, *Mobsters, Unions, and Feds: The Mafia and the American Labor Movement* 17 (2006).

"had opposed the independence of strike force attorneys when he served as the U.S. Attorney in Philadelphia," dissolved them. *Id*. at 407. *See also* James B. Jacobs & Elizabeth A. Mullin, Congress' Role in the Defeat of Organized Crime, 39 Crim. L. Bull. 3 at 12 & n.140 (2003). Significantly, I left the U.S. Attorney's Office in the fall of 1989. As an AUSA in the 1980's, supervisory or otherwise, I was not, and would not have been, privy to knowledge of any OCSF investigation of defendant.

Another mistaken supposition involves the drug investigation – "Operation Beans" – Title III wiretap application prepared by AUSA Gary Crossen. The criticism of this application by senior Department of Justice officials is discussed at some length by Judge Wolf in *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999), reversed in part on other grounds by *United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000). As Judge Wolf's decision makes clear, the application was prepared and submitted before I was made Chief of the Criminal Division on December 23, 1984. Prior to that time, as Chief of General Crimes, I would not have been called upon to review this Title III drug investigation wiretap.[6,7]

---

[6] In addition, as defendant concedes, the "Operation Beans" application revealed nothing about any rumors that defendant and Stephen Flemmi were cooperating with the FBI. Def.'s Mem. at 18. As the government states in its response, it has no intention of using the application or wiretap results at trial for the very reason that they shed no light on any issue relating to defendant's alleged crimes. Gov't. Mem. at 4. I also note that the memos regarding anonymous calls made to Governor Weld suggesting that federal agents and local police were on Bulger's payroll (Def.'s Ex. 10)

Finally, recusal is not required by defendant's suggestion that it would be appropriate to summons me as a witness in a hearing on his claim of immunity. *See* 28 U.S.C. § 455(b)(5)(iv) (a judge will recuse himself where to his knowledge he is likely to be a material witness in the proceeding); *see also Salemme*, 164 F. Supp. 2d at 111, citing *Murray v. Sevier*, 929 F. Supp. 1461, 1467-1468 (N.D. Ala. 1996) ("'[U]nsubstantiated speculation' about the possibility that the judge will be required to be a material witness concerning a disputed issue is not enough to require recusal."). Because at no time during my service as an AUSA did I participate in or have any knowledge of any case or investigation in which defendant was a subject or target, I have nothing of a relevant or material nature to offer with regard to this case or any claim of immunity.[8]

---

are dated two years after Governor Weld left the U.S. Attorney's Office to take a post in the Department of Justice in Washington, D.C., and at a time when I was no longer serving in a supervisory capacity in Boston. As a result, I would not, and did not, have knowledge of these anonymous phone calls.

[7] The *Moderassi* prosecution, in which AUSA Crossen briefly participated during its early stages, dealt with a scheme to smuggle Hawk Missile components to Iran, and had nothing to do with the defendant.

[8] *Cf. Flemmi*, 225 F.3d at 81 ("Do FBI agents, acting independently, have the authority to confer use immunity on a confidential informant? After carefully considering the arguments advanced by the parties, we conclude that they do not. Thus, the alleged promise of use immunity, even if made, was unauthorized (and, therefore, unenforceable).").

One of the most important of the measures taken in recent years by the federal court to promote public confidence in its inner workings was the random assignment of cases to judges to eliminate any suspicion, real or imagined, that case assignments were part of a politicized process in which certain judges and lawyers were favored actors. *Cf. In re Charge of Judicial Misconduct or Disability*, 196 F.3d 1285 (D.C. Cir. 1999). It would be institutionally irresponsible for me, or for that matter, any other judge, to enter a recusal in a case where a party has chosen to make untrue accusations in the possible hope of subverting that process, or at the very least, forcing a delay of a trial by injecting a diversionary issue into the proceedings. *See In re United States*, 666 F.2d at 694 ("[A] judge once having drawn a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges."). These considerations have special force where, as here, I have no doubt whatsoever about my ability to remain impartial at all times while presiding over this case.[9] Moreover, I am confident that no

---

[9] Despite defendant's assertion, the fact that a judge may know or have worked previously with a lawyer or potential witness in a case is not a ground for recusal, nor could it be in a legal system where (unlike in many European countries) judges are appointed later in life from the ranks of practicing attorneys. *See e.g.*, *In re United States*, 666 F.2d at 696-697 ("If the receipt by a judge's friend of a favor long ago from one who is a present litigant should disqualify the judge, judges could hope to preside without challenge solely in communities in which they are strangers. . . . Not only

reasonable person could doubt my impartiality.

## ORDER

For the foregoing reasons, the Motion for Recusal is <u>DENIED</u>. The Exhibits to Defendant's Motion for Recusal are ordered to be <u>UNSEALED</u> and placed on the public docket.[10]

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

would the role of judges be severely constricted by requiring disqualification under these circumstances but the result would reflect a more jaundiced view as to when there should be a reasonable doubt about a judge's impartiality than accords with the public perception."). The gratuitous and overheated suggestion that a judge of the United States District Court who has served during his career as an AUSA would "have every reason" to betray his oath of office by "protect[ing] his former colleagues in the United States's Attorney's Office to the detriment of a full exposure of the truth," I will attribute to the temptations of rhetorical excess. *See* Def.'s Mem. at 29.

[10] This unsealing order is entered without prejudice to Magistrate Judge Bowler's pending decision as to whether numerous other documents in the record should also be unsealed.