UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 99-10371-RGS

UNITED STATES OF AMERICA

v.

JAMES J. BULGER

**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION TO LIFT THE PROTECTIVE ORDER
(DOCKET ENTRY # 667); DEFENDANT'S REVISED
MOTION TO LIFT THE PROTECTIVE ORDER (DOCKET
ENTRY # 681); MOTION OF GLOBE NEWSPAPER
COMPANY TO VACATE PROTECTIVE ORDER
(DOCKET ENTRY # 675)**

**July 17, 2012**

**BOWLER, U.S.M.J.**

Pending before this court are the above styled motions
seeking to lift or amend a protective order issued by this court
on August 9, 2011.  (Docket Entry # 625).  The protective order
restricted disclosure of all discovery material exchanged between
the United States Government ("the government") and defendant
James J. Bulger ("defendant") in this widely publicized criminal
prosecution.  After hearing oral argument on July 6, 2012, this
court took the motions (Docket Entry ## 667, 675 & 681) under
advisement.

BACKGROUND

The history of this criminal prosecution is well known and
need not be repeated at length.  The Third Superceding Indictment
charges defendant inter alia with a racketeering conspiracy that
includes predicate acts of murders; racketeering; an extortion

conspiracy; extortion; a narcotics distribution conspiracy; a
money laundering conspiracy; money laundering; possession of
firearms and possession of machine guns each in furtherance of a
violent crime; possession of unregistered machine guns; transfer
and possession of machine guns; and possession of firearms with
obliterated serial numbers. (Docket Entry # 215). This case
also includes an apparent leak of confidential information to the
press "by the FBI and other law enforcement agents," as
represented by defendant in a June 2011 motion (Docket Entry #
609), and leaks by law enforcement personnel no longer associated
with this prosecution, see, e.g., Litif v. United States, 670
F.3d 39, 47 (1st Cir. 2012) (noting in related case "there was a
pattern of FBI leaks of informants to Bulger and Flemmi").
Likewise, by affidavit dated June 28, 2011, the United States
Attorney for the District of Massachusetts expressed her "grave
concern regarding information being reported to the media" and
the need to take measures to prevent the release of information
"prior to its introduction in court." (Docket Entry # 614).

Consequently, on August 8, 2011, the government filed a
motion for a protective order under Rule 16(d)(1), Fed. R. Crim.
P. ("Rule 16(d)"), to guard against prejudicial pretrial
publicity affecting the "defendant's and the government's rights
to a fair trial." (Docket Entry # 624). Defendant assented to
the entry of the protective order attached to the motion. In the

2

motion, the government represented that the discovery materials contained "highly sensitive documents" including "grand jury transcripts, FBI informant reports known as FD-209s, internal government memoranda, and extensive Title III materials." (Docket Entry # 624).

Without making an express finding of good cause, this court entered the proposed protective order on August 9, 2011. Once in place, the protective order facilitated the disclosure by the government to defendant of a multitude of discovery materials.[1] By its terms, the protective order applied to "any discovery materials" but did "not apply to any such materials which are already in the public record." (Docket Entry # 625). It reads as follows:

> As to any discovery materials produced by the government to the defendant during the discovery process in this case, defense counsel may question or confront potential witnesses about matters or information contained in the discovery materials produced by the government and may disclose such materials and their contents to the defendant and to those members of defense counsel's staff who are necessary to assist counsel in this case. The discovery materials and information they contain shall be used solely for the purpose of litigating matters in this case and shall not be divulged to any other person.
>
> This Order does not apply to any such materials which are already in the public record.

(Docket Entry # 625).

With the protective order in place, the government's

---

[1] The government estimates the disclosure as 300,000 documents.

3

disclosure and production of discovery material proceeded relatively smoothly given the breadth and volume of the material. Compliance with the protective order, however, proved difficult for defense counsel because the order did not apply to discovery material "already in the public record" (Docket Entry # 625). As a result, the order prevented defense counsel from filing relevant discovery material as an exhibit or referring to such discovery in a motion or legal memorandum unless defense counsel filed the exhibit or reference under seal or, alternatively, undertook a burdensome and time consuming task of cross referencing discovery materials in related cases to determine if the material at issue was in the public record.

This aspect of the protective order thus impeded defense counsel's ability to promptly prepare timely pleadings and other filings, according to defendant. Defendant also submits that because of prior trials, Congressional hearings and books involving this prosecution and related civil and criminal proceedings, defense counsel "cannot identify anything confidential left in this discovery" and "there are no medical records, no privileged material, and no documents implicating national security concerns."[2] (Docket Entry # 667). Defense counsel additionally contends that the protective order hampers

_____

[2] As noted below, the government disagrees with this representation.

his ability to speak about and discuss strategies with members of the bar and ordinary citizens comparable to prospective jurors. (Docket Entry # 667).

Accordingly, on May 24, 2012, defendant filed the motion to lift the protective order and one month later a revised motion to lift the protective order. Defendant seeks relief under Rule 16(d)(1) (Docket Entry # 667, pp. 1 & 3) but also supports the First Amendment argument made by the Globe Newspaper Company, Inc. ("the Globe").[3] (Docket Entry # 681, n. 2). Although based upon Rule 16(d), defendant asserts that the protective order impairs defense counsel's ability to prepare for trial in violation of defendant's constitutional "right to due process, right to prepare and present a defense, right to the effective assistance of counsel, and right to public criminal proceedings under the Fifth and Sixth Amendments." (Docket Entry # 667). In the revised motion to lift the protective order, defendant moves to lift the protective order but stay the date of such action for two weeks to allow the government to identify the documents by Bates numbers that warrant continued protection. (Docket Entry # 681).

The Globe seeks to lift the protective order in its entirety as a violation of the First Amendment. First, the Globe argues

---

[3] On June 26, 2012, the district judge allowed the Globe's motion to intervene in this proceeding for the purpose of seeking to vacate the protective order.

that the protective order fails to comply with the standards

adopted in a 2002 First Circuit case, <u>In re Providence Journal</u>

<u>Company</u>, 293 F.3d 1 (1st Cir. 2002), because it requires the

"automatic sealing of court filings" without judicial review or

review on a document by document basis. (Docket Entry # 676).

According to the Globe, the order therefore limits public access

to presumptively public court filings in violation of the First

Amendment and requires defendant to bear the burden of showing

that the information is already in the public record.[4]  Second,

the Globe contends that the protective order is an overly broad

restriction of defendant's First Amendment right to speak and the

public's First Amendment right to receive information.  The Globe

also points out, correctly, that the protective order does not

limit itself to certain categories of protected documents.

    The government, in turn, objects to lifting the protective

order.  (Docket Entry # 678).  Contrary to defendant, the

government submits that the discovery material "included

sensitive informant information containing raw data that might

identify the informant as well as smear the reputation of

numerous individuals who have never been charged with a crime."

---

    [4]  The Globe, however, overstates the application of the
protective order as mandating an automatic sealing of documents
*filed* in this proceeding.  The order applies to "any discovery
materials" as opposed to court filings or judicial documents.  It
allows defendant to file discovery material that is "already in
the public record."  (Docket Entry # 625).

(Docket Entry # 678).  The protective order thus shields the categories of "grand jury information, Title III materials, informant files," privacy rights of third parties, "<u>Giglio</u> material,"[5] and medical records from public disclosure prior to trial, according to the government.[6]  (Docket Entry ## 678 & 694).

In response to the Globe's arguments based on the <u>Providence Journal</u> case and the First Amendment, the government proposes to amend the protective order to include language specifically addressing documents filed as exhibits to court filings.[7]  The proposed language reads as follows:

The protective order dated August 9, 2011 remains in effect and includes the following modifications:

(1) Defendant, through counsel, may file motions in this

---

[5]  "Evidence that is potentially useful to impeach a witness . . . is a subset of <u>Brady</u> material called '<u>Giglio</u>' material." <u>United States v. Van Anh</u>, 523 F.3d 43, 51 (1st Cir. 2008) (citing <u>Giglio v. United States</u>, 405 U.S. 150, 153-54 (1972)).

[6]  During the July 6, 2012 hearing, the government, defendant and the Globe agreed that the categories of medical records and autopsy reports will remain subject to a protective order.  <u>See</u> <u>generally</u> <u>United States v. Carriles</u>, 654 F.Supp.2d 557, 568 (W.D.Tex. 2009) (noting wide acceptance of the "use of protective orders to prevent disclosure of private medical information").

[7]  Indicating that defendant agreed with the amendment, the government filed the proposed additional language as an attachment to a motion to continue a status conference on June 13, 2012.  (Docket Entry # 672-1).  The Globe filed the motion to vacate the protective order the following day.  Defendant's revised motion to lift the protective order filed on June 24, 2012, demonstrates that defendant wishes to vacate the August 11, 2011 protective order in full.

case that refer to the discovery produced to date without
quoting the actual discovery materials. The defendant shall
submit under seal any documents that are appended to the
pleading as exhibits. All such exhibits will be temporarily
sealed for seven business days in order to provide the
government sufficient time to review and object to any
unsealing of the defendant's exhibits. If the government
does not object after seven business days, all such exhibits
will be unsealed. If the government does object, it shall
do so in writing under seal within seven business days and
the Court will resolve any such objections.

(Docket Entry # 672-1). The government also submits that it

relied on the protective order in disclosing sensitive discovery

material.

DISCUSSION

Federal courts ordinarily address nonconstitutional grounds

for a decision prior to reaching a constitutional ground. See

Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 (1981) ("prior to

reaching any constitutional questions, federal courts must

consider nonconstitutional grounds for decision"). Accordingly,

this court initially turns to the inquiry of "good cause" under

Rule 16(d).[8] See Gulf Oil Co., 452 U.S. at 99 (considering

"authority of district courts under the Federal Rules to impose

sweeping limitations on communications" before reaching any

constitutional question). Examining the protective order under

---

[8] The Providence Journal case, relied on by the Globe and
the government in crafting the additional language, involved
nondisclosure as a violation of the First Amendment or the common
law without the overlay of a protective order entered under the
federal rules and the concomitant requirement of good cause. See
In re Providence Journal Company, 293 F.3d at 9-18.

the framework of Rule 16(d), however, does not eliminate the
First Amendment as a relevant concern.  See Public Citizen v.
Liggett Group, Inc., 858 F.2d 775, 788 (1st Cir. 1988) ("first
amendment scrutiny of protective orders 'must be made within the
framework of Rule 26(c)'s requirement of good cause'") (quoting
Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)).

I.   Lifting Protective Order under Rule 16(d)

Defendant relies on Rule 16(d)[9] to lift the protective order
in its entirety except for medical records and autopsy reports.[10]
Where, as here, a defendant seeks unlimited access to discovery
that is subject to a protective order, the federal rules provide
the framework to adjudicate the disclosure and dissemination
issue.  See Public Citizen v. Liggett Group, Inc., 858 F.2d at
789 (where protective order exists, "the merits of the claim must
be judged by the text of the rules and the applicable cases
interpreting the rules").

"Rules authorizing discovery . . . are a matter of

-------------------------------------------------

[9]  Captioned "Protective and Modifying Orders," Rule
16(d)(1) states that:

     At any time the court may, *for good cause*, deny, restrict,
     or defer discovery or inspection, or grant other appropriate
     relief.  The court may permit a party to show good cause by
     a written statement that the court will inspect ex parte.
     If relief is granted, the court must preserve the entire
     text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1) (emphasis added).

[10]  See footnote six.

legislative grace." <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 32 (1984); <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d at 788 (<u>Seattle Times</u> "focused on the fact that discovery is 'a matter of legislative grace'"); <u>see also</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) (recognizing "[t]here is no general constitutional right to discovery in a criminal case"). The existence of the protective order thus confines First Amendment scrutiny, including defendant's right to disseminate the discovery material, to the framework of Rule 16(d)'s good cause requirement. <u>See</u> <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d at 780, 788 (initially noting that, absent valid court order, parties have First Amendment right to disseminate information gained through discovery and later stating that <u>Seattle Times</u> decision "established that first amendment scrutiny of protective orders 'must be made within the framework of Rule 26(c)'s requirement of good cause'"). As explained in <u>Seattle Times</u> in addressing a protective order, albeit in a civil case,:

> it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny . . . As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context. Therefore, our consideration of the provision for protective orders contained in the Washington Civil Rules takes into account the unique position that such orders

occupy in relation to the First Amendment.

Seattle Times Co. v. Rhinehart, 467 U.S. at 33-34.

Indeed, like the intervenor in Liggett, 858 F.2d at 788 (arguing that "public has a presumptive right of access to discovery materials" absent good cause), defendant and the Globe submit there is a presumption of openness that applies to documents filed with the court. (Docket Entry # 681). The argument is well taken in both the civil context, see id. at 789 (absent showing of good cause, discovery materials are open to public and unless public has "presumptive right of access to discovery materials," party seeking protection "would have no need for judicial order"), and the criminal context, see In re Providence Journal Co., 293 F.3d at 11 (acknowledging "the constitutional presumption of public access to documents submitted in conjunction with criminal proceedings"), but Rule 16(d)'s good cause requirement still provides the overarching, relevant standard. See Public Citizen v. Liggett Group, Inc., 858 F.2d at 790. In short, where, as here, a protective order exists, Liggett teaches that the federal rules, as opposed to a common law or First Amendment right of access standing alone, provide the relevant framework. Public Citizen v. Liggett Group, Inc., 858 F.2d at 788.

In the civil context, when "'a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other

sources, it does not offend the First Amendment.'" <u>Anderson v.</u>
<u>Cryovac, Inc.</u>, 805 F.2d at 6 (addressing First Amendment access
claim seeking dissemination of discovery material in the context
of protective order) (quoting holding in <u>Seattle Times</u>, 467 U.S.
at 37). Applying the analysis to this criminal prosecution, the
protective order satisfies the second and third criteria. The
issue thus reduces to whether there was good cause for the
original protective order under Rule 16(d).

This court entered the protective order based on the history
and pattern of leaks in this case, the need to avoid prejudicial
pretrial publicity and the government's representation that, "The
discovery consists of highly sensitive documents (e.g., grand
jury transcripts, FBI informant reports known as FD-209s,
internal government memoranda, and extensive Title III
materials)." (Docket Entry # 624). The terms of the order did
not limit production to the foregoing categories. Rather, the
order only distinguished public from nonpublic documents and
restricted the use of disclosed documents to litigating matters
in this case.

Under the terms of Rule 16(d), good cause provides the basis
to enter a protective order. Fed. R. Crim. P. 16(d)(1); <u>see</u>
<u>United States v. Lee</u>, 374 F.3d 637, 652 (8th Cir. 2004) (district
court may limit discovery for good cause under Rule 16(d)). Good
cause remains the standard even where, as here, the parties
agreed to the terms of the protective order. <u>See United States</u>

v. Luchko, Crim. No. 06-319, 2006 WL 3060985, at *3 (E.D.Pa. Oct. 27, 2006) ("good cause must exist" to allow "a protective order . . . even where parties consent to a stipulated protective order") (citing Glenmede Trust Co. v. Thompson, 56 F.3d 476, 481 (3rd Cir. 1995)).  Good cause also requires a particularized, specific showing.  See United States v. Wecht, 484 F.3d 194, 211 (3rd Cir. 2007) ("'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing'") (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3rd Cir. 1994)); see also Anderson v. Cryovac, Inc., 805 F.2d at 7 ("finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements") (collecting authority).

The nature of the showing of particularity, however, depends upon the nature or type of protective order at issue. See generally Manual for Complex Litigation (Fourth) § 11.432 (2012).  Protective orders vary in range and type "from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need."  Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993).  In the case at bar, the parties entered into a blanket protective order.  A blanket protective order "extend[s] broad protection to all documents produced by [a party], without a showing of good cause

for confidentiality as to any individual documents."[11] <u>Public</u>

<u>Citizen v. Liggett Group, Inc.</u>, 858 F.2d at 790; <u>accord</u> <u>Kyles v.</u>

<u>J.K. Guardian Sec. Services</u>, No. 97-C-8311, 2006 WL 2349238, at

*4 (N.D.Ill. Aug. 15, 2006) ("[b]lanket protective orders extend

protection to all documents without a showing of cause for

confidentiality as to any particular document").  Thus, while the

government's showing would not establish good cause for a

particularized and specific protective order, it nonetheless

satisfies the showing for the blanket protective order in this

case.  <u>See</u> <u>Manual for Complex Litigation (Fourth)</u> § 11.432 (2012)

(umbrella protective "orders typically made without a

particularized showing to support the claim for protection, but

such showing must be made wherever a claim under an order is

challenged").

    Defendant, a party to an agreed protective order, as well as

the Globe seek to lift the order.  First Circuit law does not

articulate a definitive standard to modify or vacate a protective

---

[11]  Blanket protective orders "'expedite the flow of
discovery'" and avoid the time consuming, inefficient process of
a document by document review.  <u>Cipollone v. Liggett Group, Inc.</u>,
785 F.2d 1108, 1123 nn. 18-19 (3rd Cir. 1986) (addressing
umbrella protective order).  They are particularly useful in
cases involving large-scale discovery.  <u>See</u> <u>Cipollone v. Liggett</u>
<u>Group, Inc.</u>, 785 F.2d at 1123 n.18; <u>Pansy v. Borough of</u>
<u>Stroudsburg</u>, 23 F.3d 772, 787 n.17 (3rd Cir. 1994); <u>see</u> <u>generally</u>
<u>Manual for Complex Litigation (Fourth)</u> § 11.432 (2012)
(discussing umbrella protective orders).  As a separate matter,
this court's citation to <u>Cipollone</u> and <u>Pansy</u> for specific
principles is not intended as an endorsement of other principles
in these case.

order in a criminal case.  In the context of a civil case, an
intervening party seeking access to discovery material by
modification of a protective order does not need to show
"extraordinary circumstances."  Public Citizen v. Liggett Group,
Inc., 858 F.2d at 791; see generally SRS Technologies, Inc. v.
Physitron, Inc., 216 F.R.D. 525, 528 (N.D.Ala. 2003) (discussing
different standards circuits apply when a nonparty seeks
modification of protective order).  Although the First Circuit in
Liggett did not decide "how 'less restrictive' the standard
should be," it did find the standard satisfied "where the
[intervening] party seeking modification has pointed to some
relevant change in the circumstances under which the protective
order was entered."  Public Citizen v. Liggett Group, Inc., 858
F.2d at 791.

In addition, this court undeniably has the discretion and
the authority to modify or vacate the protective order under Rule
16(d) and/or its inherent power to control the discovery process.
See SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.,
210 F.R.D. 163, 166 (M.D.N.C. 2002) ("[c]ourts have the inherent
power to modify protective orders, including protective orders
arising from a stipulation by the parties"); see also United
States v. Gurney, 558 F.2d 1202, 1211 n.15 (5th Cir. 1977) (trial
court's decisions as to which documents "will be placed in the
public domain, and which are entitled to privacy and

confidentiality" are discretionary and "form an integral part of
trial management"); see also Poliquin v. Garden Way, Inc., 989
F.2d 527, 532 & 535 (1st Cir. 1993). Simply stated, albeit in a
civil case, "Control of pretrial discovery, including the entry
or modification of a protective order, is a matter falling
peculiarly within the discretion of the district court." Public
Citizen v. Liggett Group, Inc., 858 F.2d at 790.

A number of courts in the Third Circuit employ the same good
cause standard to determine modification that applies to issuance
of the original protective order with the additional factor of
assessing the parties' reliance. See United States v. Wecht, 484
F.3d at 211-212; Pansy v. Borough of Stroudsburg, 23 F.3d at 790
("motions to modify confidentiality orders" engender "same
balancing test" that applies to issuance of original protective
order with the additional consideration of the original parties'
reliance on the confidentiality order) (civil proceeding); see
also United States v. Lawson, Crim. No. 08-21, 2009 WL 2136818,
at *1 (E.D.Ky. July 16, 2009) ("[c]ourt may modify a protective
order upon a showing of good cause") (citing Rule 16(d)(1)); see
generally Public Citizen v. Liggett Group, Inc., 858 F.2d at 791
(noting "it would seem unfair to remove" protection if original
protective order rested on rationale of inducing party to allow
opponent to examine files and take relevant material); Bayer AG
and Miles, Inc. v. Barr Laboratories, Inc., 162 F.R.D. 456, 463

16

(S.D.N.Y. 1995) (appropriate to consider "the parties' reliance
on the protective order" when deciding whether "to modify a
previously stipulated protective order" sought by a party as
opposed to third party intervenor).  Even if a stronger showing
than good cause is required, the applicable standard involves
weighing and balancing a number of relevant factors including, as
explained below, reliance and changed circumstances.  See Pansy,
23 F.3d at 790; accord Ramirez Rodriquez v. Boehringer Ingelheim
Pharmaceuticals, Inc., 425 F.3d 67, 73 (1st Cir. 2005) ("Rule
26(c) requires 'an individualized balancing of the many interests
that may be present in a particular case'") (quoting United
States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C.Cir. 1999),
in parenthetical); Gill v. Gulfstream Park Racing Ass'n., Inc.,
399 F.3d 391, 400 (1st Cir. 2005) ("district court erred in the
protective order analysis because it was obligated to, and failed
to, engage in balancing").

     The government asserts that it relied on the protective
order in the process of disclosing sensitive discovery documents.
As indicated in the foregoing caselaw and explained by the First
Circuit in Liggett, it is appropriate to consider and evaluate
the reliance of a party to the protective order:

     A protective order may induce a party, for example, to
     permit an opponent to go through its files, taking relevant
     material.  The party would not insist upon screening the
     materials first because it would not fear that irrelevant or
     confidential material, protected by the order, would be made
     public.  Insofar as a rationale of this sort underlay the

17

original protective order, it would seem unfair later to remove that order's protection.

<u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d at 791. Here, the government sought the protective order before releasing documents because it desired the assurance afforded by the broad terms of the order.

The government's reliance, however, is tempered by the fact that the order was a blanket protective order. <u>See</u> <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d at 790 ("'[r]eliance will be less with a blanket order, because it is by nature overinclusive'") (quoting <u>Beckman Industries, Inc. v. International Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992), and citing <u>Public Citizen</u>, 858 F.2d at 790). Simply put, blanket protective orders are more likely subject to modification than protective orders based upon a document by document review with a concomitant showing of good cause as to each document. <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d at 790 (although "blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification"); <u>accord</u> <u>San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose)</u>, 187 F.3d 1096, 1103 (9th Cir. 1999) (blanket protective "orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document").

"Parties operating under a blanket protective order," such as the government, "cannot rely on an unreasonable expectation that such an order will never be altered." United States ex rel. Franklin v. Parke-Davis, 210 F.R.D. 257, 261 (D.Mass. 2002). Indeed, it is difficult to fathom that all of the estimated 300,000 documents produced are sensitive, confidential, grand jury testimony, Title III material or otherwise suitable and appropriate for continued protection. Thus, although this court considers the government's reliance, including its reliance on the presence of protective orders in other cases identified by the government (Docket Entry # 624, ¶ 2); (Docket Entry # 678, ¶ II(A)), the government overstates the degree of its reliance.

As with the government's reliance, the existence of changed circumstances after the original protective order merits consideration. Modifying or lifting an existing protective order implies a changed circumstance or a new situation warranting such relief. See U.S. ex rel. Poque v. Diabetes Treatment Centers of America, Civ. No. 99-3298, 2004 WL 2009414, at *2 (D.D.C. May 17, 2004); see also Public Citizen v. Liggett Group, Inc., 858 F.2d at 791. As expressed in Poque, "Good cause implies changed circumstances or new situations." U.S. ex rel. Poque v. Diabetes Treatment Centers of America, Civ. No. 99-3298, 2004 WL 2009414, at *2 (D.D.C. May 17, 2004) (considering modification of existing protective order in civil case). "[A] continuing objection to

the terms of" a protective order therefore "does not constitute
good cause to modify or withdraw [the] protective order." Id. at
*2.  The First Circuit in Liggett similarly indicates the need
for a "relevant change in the circumstances" as a basis for an
intervening party to obtain modification.  See Public Citizen v.
Liggett Group, Inc., 858 F.2d at 791 (where party seeking
modification points "to some relevant change in the circumstances
under which the protective order was entered, we think that a
standard less restrictive than 'extraordinary circumstances' is
appropriate").

     After the protective order issued on August 9, 2011, the
government produced hundreds of thousands of documents.  The
volume of the production and the organizational difficulties it
imposed on defense counsel contributed to a continuance of the
trial date.  Although defense counsel anticipated a large number
of documents, he did not anticipate an estimated 300,000
documents produced in a fashion lacking organization.  Even after
the imposition of a Bates numbering system, defense counsel
states that, "[Y]ou'll see documents related to real estate
closing of a package store, then the next document will be some
surveillance, police reports that simply say nothing was seen,
then the next set of documents will be a transcript of a witness

from some proceeding."[12]  (Docket Entry # 690, p. 10).  These

changed circumstances provide an adequate basis to modify or lift

the protective order but such circumstances do not eliminate the

need to balance and weigh all of the relevant interests in

deciding whether to lift the order.

Defendant also legitimately identifies the difficulties,

albeit not entirely unforseen, that developed in determining if a

document is in the public record before referring to it in a

memorandum, attaching it as an exhibit or discussing it with

individuals who are not members of defense counsel's staff.

Defendant characterizes the process as burdensome "and a waste of

counsel's limited time to prepare for trial."  (Docket Entry #

667).  Such concerns warrant consideration.  See United States v.

White, Crim. No. 04-370, 2004 WL 2399731, at *6 (E.D.Pa. Sept.

22, 2004) (protective order's "prohibition on disclosure other

than use of the material in preparation for trial" was unduly

burdensome and "could seriously divert the efforts of defense

counsel from preparing for trial").

It is therefore necessary to balance and weigh these

relevant circumstances against the government's expressed

---

[12]  This court's instructions to the government at the June
25, 2012 status conference provide an organizational framework
for discovery material but do not eliminate the need to reduce
the overinclusive scope of the challenged protective order by
limiting the protective order to specific and limited
confidential categories.

interests in maintaining protection based on the concerns it identifies, to wit, its reliance and the protection afforded by the order to "grand jury information, Title III materials, informant files," "highly sensitive Giglio material" and the privacy of individuals noted in the discovery material.  (Docket Entry ## 678 & 694).  As aptly noted in a civil case in the context of a motion to vacate a protective order, a court "must weigh that party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals."  Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 180 (N.D.Ill. 2006).

The privacy interests of third parties, including the victims, weigh in the mix of interests to consider in this case. See United States v. Robinson, Cr. No. 08-10309, 2009 WL 137319, at *3 (D.Mass. Jan. 20, 2009) (recognizing and discussing importance of privacy interests of victims in context of newspaper's request for court to order government's disclosure of victim's identity); United States v. Salemme, 985 F.Supp. 193, 197 (D.Mass. 1997) ("privacy interests of third parties may weigh heavily in deciding issues of impoundment"); see also United States v. Carriles, 654 F.Supp.2d 557, 566 (W.D.Tex. 2009) (in seeking protective order, government may advocate for privacy interests of nonparties).  This case involves a large number of

victims and also implicates the privacy rights of the victims'
families.  In order to balance these cognizable privacy rights
against defendant's foregoing concerns, one solution is to at
least require the government to identify by Bates number the
documents that warrant continued protection under this category.

As to the government's representation that the discovery
produced includes "highly sensitive Giglio material" (Docket
Entry # 694), the advisory committee notes to Rule 16(d)
recognize the need to protect material when disclosure may impact
the safety of a witness or lead to witness intimidation.  The
1966 amendments to Rule 16(d) similarly explain that, "Among the
considerations to be taken into account by the court will be the
safety of witnesses and others, a particular danger or perjury or
witness intimidation."  Fed. R. Crim. P. 16(d), Advisory
Committee Notes to the 1966 Amendments.  The 1974 advisory
committee notes likewise recognize the "obvious" appropriateness
of a protective order "where there is reason to believe that a
witness would be subject to physical or economic harm if his
identity is revealed."  Fed. R. Crim. P. 16(d), Advisory
Committee Notes to the 1974 Amendments.  The Third Superceding
Indictment includes numerous charges that members of "the Bulger
Group" conveyed threats to targeted individuals through the
actual and threatened use of force.

In light of these and other charges in the Third Superceding

Indictment as well as the history of this prosecution, the record supports continued protection for this category of material, as argued by the government. In order to balance the concerns of witness safety against defense counsel's ability to prepare for trial, including his ability to speak to members of the public similar to prospective jurors, the government is directed to identify the <u>Giglio</u> material by category and Bates number. In the event defendant wishes to disclose or disseminate particular <u>Giglio</u> documents, the government shall determine if it can agree to such disclosure or redact the material in a sufficient manner to address defendant's foregoing concerns. If defendant continues to object, defendant or the government may file a further motion under seal attaching the disputed material.

The government also focuses on "the privacy of individuals mentioned in government informant files"[13] and that lifting the order "threaten[s] the government's privilege 'to protect the identity of confidential informants.'" (Docket Entry # 678, pp. 4-5). The government therefore seeks continued protection for "informant files" and, as stated in the original motion, the discovery material includes "FBI informant reports known as FD-

---

[13]    The government's related argument regarding the need to protect "the families of victims of crime by preventing public release of the medical and autopsy records of murdered individuals" is moot in light of defendant's agreement to maintain the confidentiality of medical records and autopsy reports.

209s." (Docket Entry # 624).

Absent a waiver by the disclosure of the informant's identity, see United States v. Tzannos, 460 F.3d 128, 139 (1st Cir. 2006) (quoting Roviaro v. United States, 353 U.S. 53, 60 (1957), in parenthetical); Pearson v. Miller, 211 F.3d 57, 71 n.16 (3rd Cir. 2000), any informant's name should remain confidential at this juncture in the proceeding. As to the reports or FD 209 reports, informant files often contain "information which is raw and may be unreliable." United States v. Salemme, 985 F.Supp. at 197; see generally McIntyre v. United States, 447 F.Supp.2d 54, 65, 71-72 (D.Mass. 2006) ("Section 137 of the Manual of Investigative Operations and Guidelines" has "a substantive section including reports provided by the informant, recorded on FD 209" forms) (citing inter alia "Ex. 50, Report of Review of Bulger and Flemmi Informant Files for Compliance Issues at 12-14, Oct. 8, 1999").

In the case at bar, the history of this prosecution and the nature of the charges for which the grand jury found probable cause merit giving protection to the informant files subject to redaction. Protecting an undisclosed informant's interest in his own safety and serving "the public interest in encouraging the flow of information," United States v. Tzannos, 460 F.3d at 139, therefore overrides at this juncture the burden placed on defendant not to include such information in discussions with

25

third parties or in legal memorandum and exhibits. In the process of reviewing the discovery produced to defendant, the government should identify such material by category and Bates number and, in the event defendant wishes to disclose the material, provide defendant redacted versions of the informant files.[14]  If defendant continues to object to maintaining protection, he may file an appropriate motion under seal.  See, e.g., United States v. Freeman, Cr. No. 10-20635, 2011 WL 2669664, at *5 (E.D.Mich. July 8, 2011) (if "party believes that a redaction interferes with his or her ability to support a legal argument, that party may seek relief by filing an appropriate motion").  Alternatively, the government may file a motion under seal to maintain continued protection.

In addition to maintaining the confidentiality of informant files, the government identifies "grand jury testimony" and "Title III materials" as subject to continued protection. (Docket Entry # 678).  Turning to the former category, the secrecy of grand jury proceedings is "a long-established policy . . . in the federal courts."  United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958); see Fed. R. Crim. P. 6(e). Continuing the protective order over such material does not unduly burden defendant.  See, e.g., United States v. Luchko, Cr.

---

[14]  Alternatively, the government and defendant may attempt to agree upon the redaction.

No. 06-319, 2007 WL 1651139, at *9 n.11 (E.D.Pa. June 6, 2007).
The government's identification of such material by category and
Bates number, as discussed below, reduces defendant's burden and
the impact upon his right to effective assistance of counsel.  If
defendant continues to object to maintaining protection for grand
jury material or submits that the material identified is not
grand jury material, he may file an appropriate motion under
seal.  Alternatively, the government may file the appropriate
motion to maintain confidentiality under seal.

As to Title III material, the government argues that
disclosure conflicts with Congress' overriding concern in
enacting the statute of protecting privacy rights.  (Docket Entry
# 678).  The government raises a viable concern.  "[A]lthough
Title III authorizes invasions of individual privacy under
certain circumstances, the protection of privacy was an
overriding congressional concern."  Gelbard v. United States, 408
U.S. 41, 48 (1972).  Title III also imposes a showing of good
cause for the disclosure of sealed applications and orders.  18
U.S.C. § 2518(8)(b).

Here, the government's statement regarding privacy presents
a viable argument.  At this point, however, and without a
description of the material or reviewing the documents at issue,[15]

_____

[15]  In seeking continued protection for all Title III
material, the government does not identify the interceptions or
provide a description of them under seal.  If defendant continues

it is difficult to make a determination.  In order to lessen the undue burden on defendant to determine if a discovery document covered by Title III is part of the public record, the government shall designate by Bates number the documents under this category that warrant continued protection as Title III material.  Once designated as Title III material subject to continued protection, the government and defendant are directed to confer about whether defendant can agree that the material warrants continued protection.  If defendant believes the material does not warrant continued protection, he may file an appropriate motion under seal.  Alternatively, the government may file the appropriate motion to maintain confidentiality under seal.

As a final matter, defendant does not argue that the protective order serves as basis to prevent pretrial publicity and impair his constitutional right to a fair trial.  Indeed, defendant "supports the Globe's First Amendment arguments" (Docket Entry # 681) and, as stated by the Globe, "defendant argues that the overall effect of the Protective Order is to *impair* [the defendant's] fair trial rights."  (Docket Entry # 676) (emphasis in original).  Defendant submits that the

---

to challenge a designation, it behooves the government to make a stronger and more specific showing.  See Manual for Complex Litigation (Fourth) § 11.432 (2012) (umbrella protective "orders typically made without a particularized showing to support the claim for protection, but such showing must be made wherever a claim under an order is challenged").

protective order prevents defense counsel's ability to litigate this case and thereby violates defendant's right to effective assistance of counsel under the Sixth Amendment.

As a final matter, maintaining continued protection of various categories of documents or certain documents is not without an end point. Thus, defendant may move to unseal all of the remaining documents withheld from production and designated by Bates numbers in the future. The parties are also directed to confer and determine if they agree to disclose the material at the conclusion of these proceedings, whether by plea, dismissal or trial.

In sum, having weighed and balanced all of the relevant concerns, there is not an adequate showing that all of the documents the government produced or will produce should remain subject to the terms of the protective order. Simply referring to broad swaths of categories of material is not sufficient. On the other hand, vacating the protective order relied on by the government in making the original production is unfair without allowing the government an opportunity to designate documents that warrant continued protection.[16] The government is therefore

---

[16] In making this determination, this court has fully considered the protective order's effect of "shackling defense counsel's ability to litigate this case and prepare for trial" as well as defendant's alleged due process, right to prepare a defense, effective assistance of counsel and right to public criminal proceedings violations. (Docket Entry # 667).

directed to identify, by Bates number and in the foregoing designated categories,[17] the documents it submits should remain subject to continued protection.  Defendant similarly suggests a two week stay to allow the government to identify the documents by Bates numbers that should remain subject to a protective order.  (Docket Entry # 681).  After the government identifies the documents by category and Bates number, defendant shall review the material and decide whether the government's position is reasonable or whether defendant wishes to continue objecting to production.[18]  If defendant continues to object, he may file the appropriate motion under seal.  If necessary, this court will conduct an in camera document by document review of the material that remains in dispute.

At present, the protective order will remain in place for the short period of time during which the parties undergo the above review.  Thereafter, the order is subject to modification based on the categories of material the government and defendant find reasonable as warranting continued protection.  At a minimum, such categories include medical records and autopsy reports.

----

[17]  The government may subdivide the categories it originally identified and may include a category for Jencks material.

[18]  At the July 6, 2012 hearing, defense counsel stated he would be reasonable.

II.  <u>First Amendment</u>

As previously noted, the Globe seeks to lift the protective order because it violates the public's First Amendment presumptive right of access to judicial documents without any of the findings deemed necessary by the First Circuit in the Providence Journal case.  In fact, as the Globe points out, defendant does not object to vacating the protective order because of any danger of prejudicial pretrial publicity in violation of his Sixth Amendment right to a fair trial.  Cf. In re Providence Journal Company, 293 F.3d at 13 (balancing the defendant's cognizable and asserted threat to his Sixth Amendment right to fair trial caused by unrestrained disclosure of certain information against public's First Amendment right of access). The Globe also objects to the protective order under the First Amendment because it restricts defendant's ability to disseminate information and thus the public's right to receive such information without any countervailing showing of a threat to defendant's fair trial rights.

The Globe does not present its First Amendment arguments as seeking to access discovery produced by the government and not yet filed in court.  (Docket Entry # 676, p. 9) ("the Globe makes no claim to a right to access to documents produced by the government in discovery but not yet filed with the Court"). Rather, the Globe seeks access "to documents that have been filed

31

under seal as a result of the protective order."[19]  (Docket Entry
# 676, p. 9).  Thus far, the bulk of the documents remain in
defendant's possession and, with few exceptions, defendant has
not filed or submitted them in connection with the adjudication
of this criminal proceeding since defendant's arrest.

The Globe's arguments have an undeniably broad reach.
Similar to the Providence Journal newspaper in In re Providence
Journal, 293 F.3d 1 (1st Cir. 2002) (Journal sought to modify
blanket non-dissemination order as reversing presumption of
openness afforded judicial records under First Amendment), the
Globe's motion does not only seek to unseal previously sealed
documents.  Rather, the Globe seeks to vacate the entire
protective order because it reverses the presumption that
judicial records are open to the public.  In particular, the
Globe submits that the order hampers defendant's right to speak
about the case against him and the public's First Amendment right
of access to judicial documents and the public's right to receive

---

[19]  Since the August 9, 2011 entry of the protective order,
defendant's filings under seal consist of motions for additional
funds under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.
(Docket Entry ## 634, 644, 645, 646, 655 & 669).  Out of an
abundance of caution and because CJA documents are typically not
subject to disclosure, see Boston Herald, Inc. v. Connolly, 321
F.3d 174 (1st Cir. 2003), this court will afford defendant up to
and including July 23, 2012, to object to the unsealing of these
documents.  Likewise, because the Globe targets its motion and
memorandum to vacating the protective order in its entirety, the
Globe is instructed to advise this court whether it wishes to
unseal the CJA material on or before July 23, 2012.

information.

Initially turning to the <u>Providence Journal</u> case, the Globe's heavy reliance on the decision is to a certain degree misplaced.  First, the case involved a non-dissemination restriction applicable to legal memorandum, <u>see</u> <u>Id.</u> at 5-6, as opposed to discovery material.  As discussed below, the First Amendment's presumptive right of access extends to judicial documents, such as legal memorandum relied upon by a court.  Ordinarily, the right does not extend traditionally or functionally to discovery material.  Second, <u>Providence Journal</u> did not involve a pre-existing protective order entered under either Rule 26(c), Fed. R. Civ. P., or Rule 16(d), Fed. R. Crim. P.

More specifically, the case involved the clerk's office procedure under a local rule of docketing but then transmitting legal memorandum directly to the chambers of the presiding judge and the particular non-dissemination order used by the trial judge.  <u>See</u> <u>Id.</u> at 5-7.  The non-dissemination order restricted the filing of any legal memorandum that might refer to the restricted categories of grand jury information, plea negotiations and prospective witnesses.  <u>Id.</u> at 6.  Because the public and the press had a First Amendment right of access to criminal proceedings, which included the legal memorandum at

issue, <u>Id.</u> at 11,[20] the "blanket nonfiling policy" under the local rule violated the First Amendment.  <u>Id.</u> at 12-13.  The non-dissemination order, which also applied to legal memoranda, withstood First Amendment scrutiny to the extent it was not "reversible error" in light of the cognizable threat to the defendant's right to a fair trial and the narrow tailoring of the order itself.  <u>Id.</u> at 13-15.

It is well established that the public as well as the media have "a constitutional right of access to criminal proceedings under the First and Fourteenth Amendments."  <u>In re Providence Journal Co., Inc.</u>, 293 F.3d at 10.  This constitutional presumptive right of access includes the criminal trial, "most pretrial proceedings" and "documents and kindred materials submitted in connection with the prosecution and defense of criminal proceedings."  <u>Id.</u>; <u>Globe Newspaper Co. v. Pokaski</u>, 868 F.2d 497, 502 (1st Cir. 1989) (First Circuit, "along with other circuits, has established a First Amendment right of access to

---

[20]  The relevant passage reads as follows:

The local rules specify that those memoranda must contain the critical elements of the parties' arguments.  <u>See</u> D.R.I. R. 12(a)(1)-(2).  It follows that those memoranda constitute materials on which a court is meant to rely in determining the parties' substantive rights.  In a criminal case, therefore, they are subject to both common-law and First Amendment rights of access.  Accordingly, we review the district court's treatment of them under the First Amendment's heightened standard of review.

<u>In re Providence Journal Co., Inc.</u>, 293 F.3d at 11.

records submitted in connection with criminal proceedings"). The constitutional right of access therefore applies "only to judicial documents." <u>In re Boston Herald, Inc.</u>, 321 F.3d 174, 180 (1st Cir. 2003) (denying access to financial affidavit filed in court by criminal defendant). In fact, courts have "rejected claims based on First Amendment rights of access to . . . discovery materials." <u>Id.</u> at 183 (citing <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 37 (1984), and <u>Anderson v. Cryovac, Inc.</u>, 805 F.2d 1, 13 (1st Cir. 1986)). This case is no exception.

Determining First Amendment access entails examining two complimentary considerations. <u>In re Boston Herald, Inc.</u>, 321 F.3d at 182. First, under a "tradition inquiry," a court considers whether similar materials "have been open to the public in the past, 'because a tradition of accessibility implies the favorable judgment of experience.'" <u>Id.</u> (quoting <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 8 (1986)). Here, except for the few exhibits filed under seal, the Globe seeks access to and dissemination of discovery material in the hands of defendant.[21] Tradition teaches that "[d]ocuments

---

[21] Citing two cases that address standing, <u>CBS Inc. v. Young</u>, 522 F.2d 234, 238 (6th Cir. 1975); <u>Application of Dow Jones & Co., Inc.</u>, 842 F.2d 603, 607 (2nd Cir. 1988), the Globe also argues that it has standing to assert a constitutional claim of the public's right to listen because defendant is a willing speaker. (Docket Entry # 676, ¶ 1). "'A First Amendment right-to-receive claim lies only where there is a willing speaker because "a precondition of the right to receive is the existence of a willing speaker."'" <u>United States v. DiMasi</u>, Crim. No. 09-10166, 2011 WL 915349, at *3 (D.Mass. March

submitted in conjunction with discovery proceedings . . . do not thereby become part of the trial to which the tradition of access applies." Id. at 185 (providing example of a category of documents that, although connected with a trial, do not fall under a tradition of access).

Second, a court examines "'whether public access plays a significant positive role in the functioning of the particular process in question.'" Id. at 182 (quoting Press-Enterprise, 478 U.S. at 8). As in the civil discovery process, see Anderson v. Cryovac, Inc., 805 F.2d at 12, allowing access to criminal discovery would impede the discovery process. Rather than facilitate the exchange of information between the government and defendant, access would lead the government to restrict disclosures, such as those that might risk the safety of private individuals, in light of the wider audience. See generally Id. ("rather than facilitate an efficient and complete exploration of the facts and issues, a public right of access would unduly complicate the process").

Moreover, a First Amendment right or claim to inspect discovery materials "has been largely foreclosed by the Supreme Court's decision in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)." Public Citizen v. Liggett

16, 2011) (addressing standing and quoting Bond v. Utreras, 585 F.3d 1061, 1078 (7th Cir. 2009)). The district judge however already decided the issue of standing and intervention.

Group, Inc., 858 F.2d at 788; see United States v. Robinson, Crim. No. 08-10309, 2009 WL 137319, at *1 (D.Mass. Jan. 20, 2009) ("right of public access applies only to documents actually 'submitted' to a court in the course of litigation"); United States v. Salemme, Sr., Cr. No. 99-10428, 2005 WL 2010174, at *1 n.2 (D.Mass. Aug. 22, 2005) (dicta noting "there is no First Amendment right of public access to the criminal discovery process in a lending case"). As indicated in the previous section, the protective order is limited to pretrial discovery and does not restrict dissemination of the information if gained from other sources. Subject to the modification process ordered by this court in section I, the documents that will remain protected will be based on a more specific, document by document finding of good cause.

Accordingly, given the lack of a First Amendment right of access to the documents at issue, the Globe's presumptive right of access argument lacks merit. The Globe's argument based on defendant's right to speak and the public's right to receive information from a willing speaker argument also does not serve as a basis to vacate the entire protective order.

CONCLUSION

The motions to lift the protective order (Docket Entry ## 667 & 681) are **ALLOWED** in part and **DENIED** in part. The government shall comply with the directions in this opinion to

identify by Bates number and category each document that it

submits should remain subject to continued protection under the

aforementioned categories noted in this opinion or subcategories

of such categories on or before August 3, 2012.  On or before

August 17, 2012, the government and defendant shall meet to

discuss and identify the documents or categories of documents

that defendant submits are not subject to such continued

protection.  On or before August 17, 2012, the parties shall also

confer in an attempt to reach an agreement as to the terms of a

modified protective order that complies with this opinion and

includes the categories subject to continued protection.

Thereafter, defendant or the government may file an appropriate

motion under seal in the event there is a disagreement.  The

motion to vacate (Docket Entry # 675) is **DENIED** except to the

extent that the Globe may have access to the documents not

identified by the government and produced to defendant subject to

defendant's willingness to produce them.


           __/s/ Marianne B. Bowler__
           **MARIANNE B. BOWLER**
           United States Magistrate Judge