## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————
                                                    )
                                                    )
**UNITED STATES**                                   )
                                                    )
         **v.**                                     )          **Civil Action No. 99-10371-DJC**
                                                    )
**JAMES J. BULGER**                                 )
                                                    )
                                                    )
———————————————————————————)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                              **May 1, 2013**

### I.      Introduction

Defendant James J. Bulger ("Defendant" or "Bulger") now moves to vacate the Memorandum and Order issued by the Court (Stearns, J.) on March 4, 2013 ("March 4th Memo & Order"), D. 856, regarding the government's motion to resolve Bulger's proffered claim of immunity prior to trial. Bulger has also asked this Court to vacate the Order issued by the Court (Stearns, J.) on December 6, 2012 ("Docket entry, 12/6/2012") which denied in part Bulger's November 2, 2012 motion seeking discovery, some of which he argued was material to the issue of immunity. D. 768; D. 856. Bulger has also renewed many of his requests from the November 2, 2012 motion that sought discovery relating to immunity. D. 848 at 5-6. He now also seeks discovery of the names and dates of service of certain officials of the Department of Justice ("DOJ"). Id. After having held a hearing on these motions on April 26, 2013 and for the reasons stated below in this Memorandum and Order, the Court DENIES Bulger's motion to vacate and the related discovery motion and ALLOWS the government's motion to preclude Bulger from raising the alleged claim of immunity to the jury at his upcoming trial.

1

## II.    Factual Background

In a 111-page, 48-count indictment, the government has charged Bulger with participation in a racketeering conspiracy involving, among other crimes, murder, extortion and money laundering (Count 1) and separate charges of racketeering, money laundering, extortion, and a range of firearms crimes (Counts 2-27, 39-40, 42, 45 and 48).  Bulger has alleged that the government has granted him immunity from prosecution for all of these charged crimes.  The parties have filed extensive briefing addressing whether there has been a sufficient proffer that any such immunity agreement between Bulger and an authorized agent of the government existed; whether any such agreement would be enforceable as a matter of law; and whether the government's Fed. R. Crim. P. 12(b)(2) motion to resolve this matter before trial denies Bulger his Sixth Amendment right to put on a defense where he intends to present the matter to the jury at trial.

## III.   Procedural History

### A.    Bulger Proffers That He Will Defend at Trial by Claiming Immunity from Prosecution

At least as early as the August 6, 2012 status conference, counsel for Bulger has expressed an intention to present the issue of immunity at trial before the jury.  D. 713 at 41.  At the November 1, 2012 hearing on Bulger's motion to continue the trial date, counsel for Bulger noted that he did not intend to file any dispositive motion relating to Bulger's claim of immunity. D. 798 at 6.  In response to Bulger's motion for discovery relating to this issue, the government denied the existence of any such immunity agreement, but also argued that even if such an agreement existed, it could not encompass crimes committed after the alleged agreement's execution.  D. 785 at 3-9, 18-19.  In this opposition, the government also took the position that

whether any such agreement existed was an issue for resolution by the Court prior to trial.  Id. at 2.

In response, Bulger submitted a memorandum regarding the immunity issue arguing that: (1) Bulger could present his claim of immunity as a defense at trial; (2) the issue of immunity should be decided by the jury; and (3) the alleged immunity agreement between the government and Bulger could, as a matter of law, encompass crimes committed after the agreement's execution.  D. 811.  On February 6, 2013, the government moved to resolve Bulger's immunity claim prior to trial pursuant to Fed. R. Crim. P. 12(b)(2).  D. 819.

The Court (Stearns, J.) held a hearing on the government's motion on February 13, 2013. D. 827.  During the hearing, the Court raised four issues with counsel, namely:  (1) whether Fed. R. Crim. P. 12(b)(2) requires Bulger to raise a claim of immunity before trial; (2) if Rule 12(b)(2) did not do so, whether the government may compel the Court to rule on a potential immunity claim prior to trial; (3) if the government may not, whether the Court may nonetheless decide the immunity issue prior to trial; and (4) if the Court may decide the issue prior to trial, whether the Court is limited strictly to decisions of law implicated by the claim.  D. 827 at 3-5. At the hearing, Bulger continued to assert that the issue of immunity was a matter that he could elect to present to a jury and that Rule 12(b)(2) did not permit the government to bring a Rule 12 motion to preclude an immunity defense at trial.  D. 827 at 16-20.  When the Court asked about the elements of Bulger's purported defense, defense counsel acknowledged that the first element was whether the government agent who granted such immunity was authorized to do so.  D. 827 at 21.  Counsel agreed with the Court that this element was an issue of law.  Id.  The government argued that this same issue was a matter for the Court that it could properly consider pre-trial, since any fact-finding would not invade the province of the jury.  D. 827 at 9-10.  The

government also argued that the issue of immunity (for the Court) was distinct from the defenses (for the jury's consideration) of public authority and entrapment by estoppel that Bulger could assert, provided Bulger established the proper foundation and gave appropriate notice under Fed. R. Crim. P. 12.3.  D. 827 at 13-14.  At the end of the hearing, the Court solicited additional briefing from the parties on the specific issues that the Court had raised during the hearing.  D. 827 at 37.

After the hearing, both parties filed additional briefing.  D. 830; D. 831.  The government attached an affidavit from Associate Deputy Attorney General David Margolis ("Margolis Aff.") to its supplemental filing.  D. 830-1.  The government argued that the Margolis Aff. demonstrated that New England Organized Crime Strike Force Chief Jeremiah O'Sullivan ("O'Sullivan"), the person whom Bulger alleged granted him immunity, would have had no authority to grant Bulger the immunity he now claims.

**B.      Bulger Moves for Discovery Relating to Immunity**

On November 2, 2012, Bulger moved for discovery under Fed R. Crim. P. 16(a)(1)(E). D. 768.  He now also moves to vacate the Court's ruling on that motion.  D. 856 at 1.  In the discovery motion, Bulger sought, <u>inter alia</u>, DOJ internal correspondence, by and between the U.S. Attorney's Office and the New England Organized Crime Strike Force, the DOJ and the Federal Bureau of Investigation ("FBI") relating to Bulger and certain alleged associates referred to as the "Winter Hill Gang" (Requests 1-3), D. 768 at 5; all correspondence from Robert Mueller, now head of the FBI, and any other members of the DOJ relative to Bulger, Stephen Flemmi, John Martorano and Kevin Weeks (Request 4), D. 768 at 13; prosecution memoranda relating to investigations regarding Bulger and his associates from 1967 to the present (Request

6), D. 768 at 14;[1] a 1979 memorandum addressed to Gerard McGuire from DOJ attorneys O'Sullivan and McDowell (the so-called "race fix memorandum") (Request 7),[2] D. 768 at 16; DEA tape recordings of Bulger's automobile in 1985, memoranda during the course of the "Operation Beans" investigation and reports regarding the compromise of this investigation by any DOJ member directed to Mueller or former U.S. Attorney William Weld (Requests 10-11), D. 768 at 16-17; logs of O'Sullivan's daily appointments, phone calls and related notes (Request 19), D. 768 at 30-31; notes and 302 reports pertaining to interviews, depositions and testimony of O'Sullivan (Requests 20; 22-23), D. 768 at 31-32; depositions of O'Sullivan other than those conducted in the Limone and Rakes civil actions which the defense has already received (Request 21), D. 768 at 31; and documents pertaining to allegations of misconduct by former FBI agent Thomas Daly (Request 25), D. 768 at 32-33.[3]  As to these categories of documents, Bulger argued that they were material to his alleged defense of immunity and, therefore, discoverable under Fed. R. Crim. P. 16(a)(1)(E).  D. 768 at 3, 5-10, 13-14, 16-17, 29-34.

In addition, Bulger sought certain discovery in the November 2nd motion that he alleges concerns not his purported defense of immunity, but bears upon the credibility of three anticipated, key government witnesses at trial.  Bulger therefore contends that he is entitled to this discovery as Giglio information.  See Giglio v. United States, 405 U.S. 150 (1972).  These requests included the prison records of John Martorano including all records reflecting money that law enforcement placed or directed to his commissary or any "financial considerations"

---

[1] The Court notes that Bulger withdrew Request 5.  D. 768 at 14.

[2] The Court also notes that Bulger's motion made no reference to Requests 8 and 9.  See Docket entry, 12/6/2012.

[3] In his motion, Bulger referred to this request as Request 24, but the Court believes that it is misnumbered, particularly since Bulger also acknowledges that Request 24 has been fulfilled.  Accordingly, the Court will refer to it here as Request 25 as the Court did in its December 6, 2012 Order.  Docket entry, 12/6/2012.

given to him including upon his release from prison, his pre-sentence report ("PSR"), concessions regarding the forfeiture of certain property to satisfy his obligations to his ex-wife, whether certain persons associated with John Martorano were targets of any criminal investigation, any agreement about the limitation of his testimony, documents "authored, signed or approved" by former Attorney General Janet Reno relative to Martorano and his plea agreement and any and all promises, rewards or inducements provided to him by DOJ (Request 13). D. 768 at 18-21.[4]  Bulger also asked for all prison records of Stephen Flemmi, his PSR, plea and sentencing transcript, any and all promises, rewards or inducements provided by any member of the DOJ not previously produced and all documents relating to a polygraph test administered to Flemmi (Requests 14 and 26).  D. 768 at 21-23, 34.  Bulger further requested records regarding Patrick Nee as it bears upon the "amount of favor" the government extended to John Martorano and Kevin Weeks by not prosecuting Nee (Request 15).  D. 768 at 23-25.  He also asked for records pertaining to James Martorano (Request 17).[5]  D. 768 at 28-29.[6]  Finally, Bulger asked for records concerning Weeks, including his PSR and any and all other promises, rewards and inducements from DOJ to Weeks (Request 16), D. 768 at 27.

In a December 6, 2012 Order, Judge Stearns ruled on the motion, granting it in part and denying it in part, and noting that certain of the requests had become moot.  Docket entry, 12/6/2012.  In regard to Bulger's request for internal DOJ correspondence relating to Bulger and his associates (Requests 1-4), Judge Stearns denied these requests except as to:

---

[4] The Court notes that Bulger withdrew Request 12.  D. 768 at 18.

[5] The Court notes that Bulger withdrew Request 18.  D. 768 at 29.

[6] Although Bulger contends that the discovery sought about Nee primarily bore upon the credibility of John Martorano and Weeks, he also argued that such discovery would also be "corroborative support of [his claim of] immunity" and incorporated the same basis for the request as to James Martorano.  D. 768 at 26, 29.

> any correspondence reflecting the existence of any agreement, formal or informal, acknowledging or memorializing the conferral of immunity on defendant by the U.S. Government or its authorized agents for any past or prospective crimes for which defendant was responsible (or an affirmance that no such correspondence exists).

Id.  As to the other requests that Bulger argued were material to the issue of immunity, the Court denied the request for prosecution memoranda (Request 6) on the grounds that the work product doctrine and the deliberative process privilege protect these documents from disclosure, but noted that to the extent such memoranda contained any potentially exculpatory evidence, the government represented that such material had been produced.  Id.  As to the race fix memorandum sought in Request 7, the Court declared this request moot as former President George W. Bush had asserted executive privilege over it.  Id.  The Court declared Requests 10 and 11 moot since the government had already produced the recordings sought from "Operation Beans" and to the extent that Bulger sought other documents regarding this investigation, the government represented that it had produced such documents where any such documents might tend to be exculpatory or suggest the existence of an immunity agreement.  Id.  As to the requests for the logs, notes, reports or depositions not previously produced regarding O'Sullivan, the Court declared this request moot in light of the government's representation that all such relevant and unprivileged information in its possession as to these categories had been produced.  Id.  As to the request regarding an alleged improper relationship between former FBI agent Daly and an informant (Request 25), the Court denied the request because Bulger had shown "no conceivable relationship" between the information sought and this case.  Id.

As to the Giglio discovery sought regarding John Martorano, Stephen Flemmi and Kevin Weeks, the Court allowed these requests in part.  Specifically, the Court allowed the request for prison records and evidence of preferential treatment of John Martorano in that the government represented that it would provide a list of any government payments, state or federal, to his

prison commissary account; had already produced all requested records regarding his ex-wife; and that former Attorney General Janet Reno had no involvement with his plea agreement (Request 13).  Id.  As to all of Bulger's requests for the PSRs of Martorano, Flemmi and Weeks, the Court denied these requests on the grounds that the defendant had made an insufficient showing to warrant production (Requests 13, 14, 16).  The Court allowed the motion as to Flemmi in part as well and noted that the government agreed to produce the plea and sentencing hearing transcripts and to expedite the production of the recordings of Flemmi during his incarceration in Plymouth (Request 14).  Id.  As to Request 26, the request for documents relating to the polygraph of Stephen Flemmi, the Court denied this request since polygraph results are inadmissible in a federal criminal trial for any purpose.  Id.

C.    **The Court Rules on the Government's Rule 12(b)(2) Motion Regarding Immunity**

In the March 4th Memo & Order, as discussed more thoroughly below, the Court ruled that the issue of immunity was a question that the Court both could and should decide before trial.  D. 832 at 3.  Second, the Court observed that prior to March 4, 2013, counsel for Bulger had alleged only that O'Sullivan had orally promised Bulger immunity prior to December 1984 and that the immunity extended to "prosecution for any and all crimes, past and future, up to and including murder."  Id. at 13.  Third, the Court concluded that if O'Sullivan had granted Bulger immunity, the immunity agreement could not have, as a matter of law, extended to crimes committed in futuro.  Id. at 15.  Such an agreement, the Court found, could not have been in the scope of O'Sullivan's authority as an agent of the DOJ.  Id. at 17.  The Court deferred any ruling with respect to Bulger's allegations that O'Sullivan had immunized Bulger for crimes committed prior to the alleged grant of immunity because "[w]ithout knowledge of the date of the alleged agreement, . . . the court is unable to say whether this determination [that a grant of prospective

8

immunity was unenforceable] nullifies defendant's claim of immunity in its entirety (again, assuming proof of its existence)," D. 832 at 17 and because the government proffered the Margolis Aff. after the hearing and the Court wanted to give the defense an opportunity to respond.  D. 832 at 18.  To that end, the Court granted the parties additional time to file supplemental briefing and, if warranted, request an evidentiary hearing regarding whether any grant of historical immunity exceeded O'Sullivan's scope of authority and whether a presumed grant of prospective immunity vitiated the whole of any agreement.  Id. at 19 (citing Kiely v. Raytheon, 105 F.3d 734 (1st Cir. 1997)).

**D.     The First Circuit Issues Its Decision on Recusal Pursuant to 28 U.S.C. § 455(a)**

While the parties argued the immunity issue, they also were litigating Bulger's mandamus petition to the First Circuit regarding whether Judge Stearns should have recused himself where, as Bulger alleged, the judge's impartiality could reasonably be questioned under 28 U.S.C. § 455(a).  At oral argument before the First Circuit on January 8, 2013, counsel for Bulger proffered that O'Sullivan had granted Bulger immunity sometime prior to December 1984 (the date that Judge Stearns became Chief of the Criminal Division within the U.S. Attorney's Office).  Oral Argument at 4:01, In re Bulger, 12-2488 (1st Cir. Jan. 8, 2013).

The First Circuit ultimately granted the petition, having determined that Judge Stearns's impartiality could reasonably be questioned under 28 U.S.C. § 455(a) where "a reasonable person might question the judge's ability to preserve impartiality through the course of this prosecution and the likely rulings made necessary by the immunity claim."  In re Bulger, 710 F.3d 42, 49 (1st Cir. 2013).  At several junctures in its decision, the First Circuit took care to note that its ruling was based only upon a concern about the appearance of bias and that no actual bias on Judge Stearns's part was alleged or found.  Id. at 46, 49 n.3.  Given that the First Circuit's

decision issued shortly after the Court had issued the March 4th Memo & Order, the appellate court noted in explicit terms that its ruling did not "require that Judge Stearns's March 4 order (or any other, save the one under review) be vacated.  The defendant is free to respond to that order as he sees fit, but nothing we decide here necessarily requires reploughing the ground, given the absence of any allegation that Judge Stearns is actually biased." <u>Id.</u> at 49 n.3.  Shortly after the First Circuit's ruling, this case was redrawn to this session.  D. 839.

### E.      Bulger Now Moves to Vacate the March 4th Memo & Order

Bulger has filed additional briefing, as solicited by the Court in the March 4th Memo & Order, and has now moved to vacate that decision.  D. 855; D. 856.  The government has opposed the motion and renewed its request that the Court preclude Bulger from raising immunity at trial.  D. 862.  Bulger seeks to vacate on the grounds that to the extent that the prior presiding judge's impartiality to hear this case could be reasonably questioned, "[t]he resolution of this question [of immunity] must be free from doubts about the judge's neutrality" and "[o]nly a full reconsideration of the immunity issue by a judge of unquestioned neutrality can purge the trial of any appearance of partiality," D. 856 at 2-3; the distinction between prospective and historical immunity is a false dichotomy injected into the Court's analysis by the government where Bulger posits that his immunity was "ongoing," D. 856 at 5; the Court's denial of discovery to Bulger regarding the immunity issue was inconsistent with its acceptance of the Margolis Aff. proffered by the government, D. 856 at 7; and that the March 4th Memo & Order and related discovery rulings amount to a denial of Bulger's constitutional rights, namely his right to put on a defense.  D. 856 at 7; D. 855 at 10.

### F.      Bulger Also Moves to Vacate the December 6, 2012 Electronic Order Relating to Discovery and Has Filed a Separate Motion Seeking the Same Discovery

Bulger also seeks to vacate Judge Stearns's December 6, 2012 ruling, which denied in part certain of Bulger's requests for discovery.  D. 856.  The motion seeks to vacate the December 6, 2012 Order <u>in toto</u> and Bulger's discovery motion renews many of his initial discovery requests as related to his alleged immunity defense.  D. 848 at 5-6.  In addition, Bulger now also seeks discovery of the names and dates of service for:  (1) Department of Justice attorneys assigned to the Strike Force from 1972 to 1994; (2) Chiefs of the Criminal Division from 1972 to 1994; (3) Chiefs of the General Crimes Section from 1972 to 1994; and (4) the Special Agents in Charge of the Drug Enforcement Administration from 1972 to 1994.  <u>Id.</u> at 6.  The government also opposes this motion.  D. 859.

The Court scheduled a hearing on both motions, D. 848 and D. 856, for April 19, 2013, but that hearing had to be rescheduled in light of the Courtwide closure that day.  D. 868, 880.  The hearing was held on April 26, 2013 at which time the Court also heard counsel on the other discovery motions pending at the time, D. 846, 847, 878 and 883.  The Court took all matters under advisement.

## IV.    Discussion

### A.    Defendant's Motion to Vacate the March 4, 2013 Memorandum and Order

#### 1.    *Nothing in the First Circuit Decision on Recusal Mandates Reversal of the March 4th Memo & Order*

The First Circuit's opinion made abundantly clear that it found no actual bias on Judge Stearns's part and that Bulger alleged no such actual bias.  <u>In re Bulger</u>, 710 F.3d at 46 (noting that "defendant has made no claim that Judge Stearns has in fact demonstrated any bias in his handling of the case").  Vacatur of prior decisions, on this ground, is not required.  Accordingly, "[i]t does not follow . . . that this litigation must return to square one" or even where it stood

when Bulger first made his request for recusal.  In re Sch. Asbestos Litig., 977 F.2d 764, 785 (3d Cir. 1992).

Where, as here, "no actual bias is at issue, where the question is solely one of appearances, judicial actions already taken are not necessarily rendered invalid because of a circumstance that violates § 455(a)."  In re Allied Signal Inc., 891 F.2d 974, 975 (1st Cir. 1989). If any action shall be taken as to past rulings after such a finding, it should be only "to fashion retrospective relief with an eye toward a just result."  Id. at 976 (citing Liljeberg v. Health Srvcs. Acq. Corp., 486 U.S. 847, 862 (1988)) (declining to declare mistrial on mandamus petition where it would be unfair to interrupt the present trial, given the time and expense expended by the parties and where declining to do so would not create a "serious crisis of confidence in the impartiality of the judiciary"); see In re Cargill, 66 F.3d 1256, 1269 (1st Cir. 1995) (Campbell, J., dissenting) (noting that if the majority had granted the petition for a writ of mandamus under § 455(a) "requiring [appointment of] a new judge . . . it would have been open to this court to let stand the former judge's ruling on [the party's] dismissal motion").  In considering whether to allow prior orders stand after a finding of "a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public confidence in the judicial process."  Liljeberg, 486 U.S. at 864.

Here, the First Circuit was aware of the March 4th Memo & Order at the time that it issued its decision on March 14, 2013 and noted that nothing in its ruling necessarily requires "reploughing the ground" covered by Judge Stearns.  In re Bulger, 710 F.3d at 49 n.3.

Bulger, however, urges this Court to replough the ground because "[o]nly a full reconsideration of the immunity issue by a judge of unquestioned neutrality can purge the trial of

any appearance of [prior] partiality." D. 856 at 2-3. Such consideration is unnecessary. The issue of immunity addressed in the March 4th Memo and Order and the related discovery motion were extensively briefed. The Court heard oral argument on the former issue and both matters were resolved by the Court in well-founded and well-reasoned orders. Docket entry, 12/6/2012; D. 832. Although Bulger contends that "Judge Stearns's rulings on these issues were almost entirely adverse to the defendant," D. 856 at 2, (a characterization that the Court rejects, particularly in regard to Judge Stearns's discovery rulings), an adverse ruling does not mean that the rulings were wrongly decided or were "tinged with bias" as Bulger contends. D. 856 at 3.

### 2.    The Court Declines to Apply the "Law of the Case" Doctrine

Since vacatur is not required in the absence of actual bias, In re Allied Signal, Inc., 891 F.2d at 975; see also In re Bulger, 710 F.3d at 49 n.3, the government urges that the Court should decline to vacate the March 4th Memo & Order since it is "law of the case" and should continue to govern the same issues in the subsequent stages in the same litigation. D. 862 at 5. The law of the case doctrine contemplates that a legal decision made at one point during a legal proceeding should "remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (citing Christianson v. Colt Indus. Oper'g Corp., 486 U.S. 800, 816-17 (1988)).

Under this doctrine, reconsideration of a prior legal decision is, in general, only appropriate under certain circumstances. Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002). Specifically, reconsideration is proper if (1) the court's initial ruling was made on an insufficient record or was preliminary or tentative; (2) there has been a material change in the controlling law; (3) the parties have presented newly discovered evidence that bears on the question; or (4) necessary to avoid manifest injustice. Id. (internal citations omitted). Under

13

these circumstances, a showing of manifest injustice "requires, at a bare minimum, 'a definite and firm conviction that a prior ruling is unreasonable or obviously wrong' and resulted in prejudice." Moran, 393 F.3d at 8 (quoting Ellis, 313 F.3d at 648)).  The first three exceptions are clearly inapposite.  Specifically with regard to the first, the Court notes that the March 4th Memo & Order considered only those issues ripe for consideration and, in fact, gave counsel leave to file additional briefing and request a hearing regarding the issue of historical immunity.  Nor have the parties brought to the Court's attention any change in controlling law or newly discovered evidence.  The Court recognizes that Bulger's motion for vacatur could also be construed to argue that it would be manifest injustice for the March 4th Memo & Order (and related discovery order) to stand in light of the ruling about the appearance of impropriety.  The Court disagrees, as discussed above, that there is any evidence of partiality in any of the prior rulings of the Court and the First Circuit's decision does not suggest otherwise.  The Court need not revisit the March 4th Memo & Order for this reason.

However, "[i]n this circuit the 'law of the case' doctrine has not been construed as an inflexible straightjacket that invariably requires rigid compliance with the terms of the mandate." Ne. Util. Serv. Co. v. FERC, 55 F.3d 686, 688 (1st Cir. 1995) (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912) (Holmes, J.) (noting that "the phrase[] 'law of the case,' . . . merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power")).  Although not compelled to do so in light of the First Circuit's ruling on recusal or because of any risk of manifest injustice arising from adhering to the March 4th Memo & Order and December 6, 2012 Order regarding discovery as law of the case, the Court, in its discretion, addresses this issue anew.

3.    *After Independent Consideration, the Court Concludes That the Issue of Immunity Is for the Court, Not the Jury to Decide*

a)    *Immunity is an Issue for the Court's Consideration*

Bulger has argued that he is entitled to a jury finding on the issue of immunity. He contends that Fed. R. Crim. P. 12(b)(2) empowers him, and not the government or even the Court, to decide the timing of raising the issue of immunity. Bugler asserts that he may raise immunity as a defense at trial. It, however, remains the case that any alleged immunity agreement, if any such agreement existed, is a bar to prosecution to be determined by the Court and not a defense to the crimes charged to be presented to the jury.

As an initial matter, this Court agrees that Bulger's argument is "premised on a faulty reading of Rule 12." D. 832 at 3. Rule 12(b)(2) provides that "[a] party may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial of the general issue." The categories of matters that are covered by Rule 12(b)(2) are defenses, objections and requests that, if not made pre-trial, are not waived. Id. at 3 (citing United States v. Jarvis, 7 F.3d 404, 414 (4th Cir. 1993) (noting that "[f]ailure to raise a contemporaneous objection of immunity before trial does not constitute a forfeiture of the objection . . .") (emphasis in original)). That is, the consequence of not raising such matters pre-trial is not that the issues convert to a jury matter at trial, but that the issue is not otherwise forfeited. See United States v. Meacham, 626 F.2d 503, 509 (5th Cir. 1980); United States v. Issacs, 493 F.2d 1124, 1140 (7th Cir. 1974).

Moreover, the issue of immunity is one that the Court "can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). The general issue for trial is the guilt or innocence of the defendant. See United States v. Barletta, 644 F.2d 50, 58 (1st Cir. 1981). Whether the government (specifically, O'Sullivan) had the authority to enter into such an agreement, whether

such an immunity agreement existed and whether the charges in this case fall within the alleged agreement amount to issues severable from that of the general issue of guilt or innocence.  <u>See</u> D. 832 at 4; <u>United States v. Thompson</u>, 25 F.3d 1558, 1562-63 (11th Cir. 1994) (denying pretrial motion to dismiss indictment based on defendant's allegations that immunity barred his prosecution, and noting that to dismiss the indictment on these grounds, "the court would have to find that an agreement existed, that [the defendant] had substantially performed his part of the bargain, and that the government had breached the clear terms of the agreement").  Even if the Court has to make preliminary findings of fact to do so, "a defendant's rights [under an immunity agreement] are determined by the terms and conditions of the bargain as found by the court."  <u>United States v. McLaughlin</u>, 957 F.2d 12, 16 (1st Cir. 1992).  Immunity agreements, like plea agreements, are contractual in nature; courts therefore interpret such agreements according to principles of contract law.  <u>See</u> <u>McLaughlin</u>, 957 F.2d at 16; <u>United States v. Black</u>, 776 F.2d 1321, 1326 (6th Cir. 1985).  In doing so, courts must determine the terms and scope of such agreements.  <u>See</u> <u>McLaughlin</u>, 957 F.2d at 16.  Courts routinely make such findings of fact in ruling on Rule 12 motions.  <u>See, e.g.,</u> <u>United States v. Crooker</u>, 688 F.3d 1, 8 (1st Cir. 2011); <u>United States v. Aleman</u>, 286 F.3d 86, 92 (2d Cir. 2002).  Accordingly, any fact-finding necessitated by determining whether any such immunity barred prosecution of Bulger for the crimes charged here would not invade the province of the jury in making the ultimate determination of guilt or innocence.

Bulger points to the posture of the pending Rule 12(b)(2) motion as having been brought by the government and not by the defendant as further proof that this issue should not be resolved pre-trial and that he should not be required to make a further proffer about his alleged immunity.  In his papers and again at the April 26th hearing, Bulger points to the fact that the

although the rule itself makes such pre-trial motions permissive by "[a] party," the advisory committee notes to the Rule refer to "the defendant [who] at his option may raise by motion before trial . . . all defenses and objections which are capable of determination without a trial of the general issue." Fed. R. Crim. P. 12 advisory committee's note.   Nevertheless, "the Advisory Committee Note is not the law; the rule is.  Accordingly if the Advisory Committee Note can be read in two ways, we must read it, if we consult it at all, in a manner that makes it consistent with the language of the rule itself, and if the rule and the note conflict, the rule must govern." United States v. Carey, 120 F.3d 509, 512 (4th Cir. 1997).

But even so, the Court's consideration of the government's motion is consistent with the Court's inherent authority to consider motions in limine and appropriately narrow the focus of the presentation of evidence at trial.  Determination of this issue pre-trial is also proper in that it promotes the efficient use of the Court's resources.  In both civil and criminal matters, courts routinely avail themselves of procedural devices to narrow the issues for trial.  Such a pre-trial determination cuts both ways.  As the March 4th Memo & Order noted, "[p]retrial denial of defendant's immunity claim would narrow the focus of inquiry of trial," but "[c]onversely, a finding that defendant's prosecution is barred by a valid grant of immunity would prevent an unnecessary trial and the expenditure of considerable public resources."  D. 832 at 10-11.

Finally, that Bulger did not elect to raise the issue of immunity under Rule 12(b)(2) does not turn the issue into one that must be decided by the jury at trial.  "That a claim of immunity may be raised at trial does not mean that deferring the decision to do so operates to convert the claim from one of law into a matter of jury-decisional fact."  D. 832 at 8 and cases cited.[7]

---

[7] At the April 26th hearing, counsel for Bulger suggested that a footnote in an earlier decision, D. 771 at 12 n.13, contradicts the Court's later ruling on this point in the March 4th Memo & Order.  This Court does not agree.  First, that footnote predated the government's Rule

Declining to raise the issue now does not turn the issue into a jury question and, therefore, Bulger's argument that deciding this issue pre-trial on the government's motion denies him his Sixth Amendment right to put on a defense at trial rings hollow.

> b)    *The Alleged False Distinction between Prospective and Historical Immunity Was Not Improper or Inconsistent with Bulger's Limited Proffer and the Court Will Not Vacate the Prior Ruling Regarding The Former*

From the Court's review of the various filings regarding Bulger's alleged immunity, the proffer of the parameters of that immunity has evolved over time.  See, e.g., D. 768 at 6 n.2; D. 811 at 10-12; D. 827 at 37; D. 855 at 9-10.  Based on defense counsel's representations to this Court and to the First Circuit, the most that can be said now is that Bulger contends that O'Sullivan gave him immunity from prosecution of crimes in this district and that this agreement was entered into sometime before December 1984 and ended in 1989.  D. 832 at 13; see also Oral Argument at 4:01, In re Bulger, 12-2488 (1st Cir. Jan. 8, 2013); D. 855 at 9-10 (noting that Bulger "kept his promise to the Dept. of Justice until O'Sullivan left the U.S. Attorney's Office in 1989").  Bulger contests the distinction between prospective immunity for committing crimes after the agreement's execution and historical immunity for crimes committed in the past that the Court employed in its March 4th Memo & Order.  But the defendant's proffer of his alleged immunity was still evolving at the time of the February 13, 2013 hearing on this matter and even

---

12(b)(2) motion and the full argument and briefings by both parties on this matter.  Second, the cases cited in that footnote, at most, support the Court's ruling that immunity is an issue for the Court to determine and, at a minimum, do not contradict it.  See United States v. Doe, 63 F.3d 121, 125 (2d Cir. 1995) (affirming denial of defendant's Rule 12 motion to dismiss where his claim was in essence that, as a confidential informant, he had been authorized to engage in criminal transactions and a "claim of public authority is an affirmative defense that is tried to the jury" since it "provides a defense to liability for the crimes charged in the indictment"); St. Hilaire v. City of Laconia, 71 F.3d 20, 24 & n. 1 (1st Cir. 1995) (ruling that the "ultimate question of qualified immunity should ordinarily be decided by the court" in the context of a § 1983 claim even while noting that whether the factfinder as to disputes of material fact was for the judge or jury was still not well settled).

now Bulger characterizes his immunity agreement, while in effect, as "ongoing."  D. 855 at 8.

Given the paucity of the proffer about the terms, timing or scope of this alleged agreement,

particularly against the backdrop of the charges in this case that span a period from 1972 to 2000,

it certainly was reasonable for the Court to frame the analysis in terms of historical and

prospective immunity and, notwithstanding Bulger's suggestion otherwise, see D. 856 at 3, the

Court's use of this terminology does not suggest a biased wholesale adoption of the

government's position.  However the Court previously framed the issue, the ruling in the March

4th Memo & Order that any alleged agreement of prospective immunity was unenforceable as a

matter of law is well-founded and the Court declines to vacate it.  D. 832 at 17.

Certainly, the Court understands the point that defense counsel made at the April 26th

hearing that to rule in Bulger's favor on this motion would not amount to blessing an alleged

"license to kill," but would mean only that Bulger could contend that an authorized government

agent granted him immunity from prosecution in this district for the charges alleged in this case,

namely, a wide ranging racketeering conspiracy, and separate counts of racketeering, extortion,

money laundering and firearms offenses.  However, this point does not change the Court's

independent conclusion that Bulger's claimed immunity is not a defense to the charged crimes to

be presented to the jury at trial.

After independent review, this Court agrees "[t]hat no jury right attaches to defendant's

claim of immunity is firmly established by binding precedent."  D. 832 at 5.  This Court has been

unable to find, and counsel have not identified any cases, save Bulger's citation to Thompson, to

suggest otherwise.  Thompson does not aid Bulger's argument.  In Thompson, although there

was a pre-trial denial of a motion to dismiss based upon a claim of immunity, the defense that the

Eleventh Circuit concluded the district court should have allowed the defendant present at trial

was not an immunity defense, but a defense of entrapment by estoppel, id. at 1565, a defense,

that as discussed below, this ruling does not preclude the defendant from raising at trial.

> c)   There Has Been an Insufficient Proffer of the Claimed Immunity
>       Agreement, Regardless of Whether Such Immunity is
>       Characterized as Prospective, Historical or Ongoing

Ultimately, the defendant bears the burden of demonstrating that an agreement existed,

that the promisor had actual authority to enter into the agreement and that the defendant

detrimentally relied on the promise not to prosecute.  United States v. Flemmi, 225 F.3d 78, 84

(1st Cir. 2000) (defendant seeking to enforce promise has burden to demonstrate promisor's

authority to make promise and defendant's detrimental reliance on promise); see also United

States v. Jimenez, 256 F.3d 330, 347 (5th Cir. 2001) (defendant bore burden of proving that

immunity agreement existed); Thompson, 25 F.3d at 1563 (affirming district court's ruling that

there was not sufficient evidence to find the existence of an immunity agreement, where "the

only evidence in support of a grant of immunity was [the defendant]'s conclusory statements that

such an agreement existed"); United States v. Salemme, Nos. 94–10287–MLW, 97-10009-

MLW, 1997 WL 810057, at *4 (D. Mass. Dec. 29, 2007) (defendant has burden to demonstrate

existence of immunity agreement at motion to dismiss).  No showing has been made here and

Bulger has declined to make a further proffer to support his contention.  In the March 4th Memo

& Order, the Court offered Bulger an opportunity for additional briefing and an evidentiary

hearing to test the government's assertion that even if O'Sullivan had granted Bulger immunity,

O'Sullivan had no authority do so.  D. 832 at 18-19.  Although Bulger submitted further briefing

regarding this issue, D. 855, he declined any pre-trial hearing regarding his claim of immunity on

the grounds that "[t]he defendant will not request an evidentiary hearing that the court is not

authorized to conduct." D. 855 at 10.[8]  Moreover, counsel for Bulger indicated at the April 26th hearing that he would not participate in any pre-trial evidentiary hearing determinative of the immunity issue regardless of how the Court rules on the pending motion.

The Court disagrees with Bulger that forcing him to make a further proffer or offer evidence regarding the alleged immunity agreement in pre-trial proceedings violates his Fifth Amendment right against self incrimination.  It may be too much to say that Simmons v. United States, 390 U.S. 377, 390 (1968), bars the use of any testimony of a defendant from a pre-trial evidentiary hearing against the defendant at trial, D. 832 at 12 n.9, but it would do so here. Simmons was concerned with the "undeniable tension" that exists when a defendant is "obliged either to give up what he believed, with the advice of counsel, to be a valid Fourth Amendment claim, or in legal effect, to waive his Fifth Amendment privilege against self-incrimination." Simmons, 390 U.S. at 394.  The Supreme Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another" and held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."  Id.  The First Circuit has not applied the Simmons bar where a defendant did not have to surrender a constitutional right to assert another by testifying at a pre-trial conference, but has applied the Simmons bar where contemplated pre-trial testimony created this

---

[8] In the March 4th Memo & Order, the Court also solicited supplemental filings as to whether the prospective aspect of the alleged grant of immunity was severable from the entirety of the alleged agreement, or if the entirety of such agreement would be void as a matter of public policy. D. 832 at 19 (citing Kiely, 105 F.3d at 734).  In response, Bulger maintained his position that the Court had no authority to review a prosecutor's decision not to prosecute Bulger. D. 855 at 7-8.  But the law in this Circuit is that "an agreement to achieve mutual benefit from the parties' cooperative violation of the law…even if explicitly agreed to by both parties, is void and unenforceable as against public policy."  Kiely, 105 F.3d at 736.  This principle remains implicated by the agreement alleged here, particularly where the Court has already ruled that such agreement, at least as to prospective immunity, is unenforceable as a matter of law.

intolerable choice.    Compare United States v. Catano, 65 F.3d 219, 224 (1st Cir. 1995) (concluding that Simmons would not bar use of a defendant's pre-trial testimony limited by the Court to his understanding of a plea/cooperation agreement at trial), with United States v. Smith, 940 F.2d 710, 713 (1st Cir. 1991) (ruling that if the defendant had testified at a pre-trial evidentiary hearing about a meeting with an agent giving rise to his contention that the government had authorized his possession of firearms, such testimony would not waive his Fifth Amendment right under Simmons).    Bulger should not and would not be forced to incriminate himself in a pre-trial hearing to assert his Sixth Amendment right to raise immunity as a bar to this prosecution, or as he contends, put on a defense.    This is the untenable situation that Simmons bars for a defendant and it would, in this Court's view, serve to bar the use of any of his statements at trial on the issue of guilt.[9]

That this matter is before the Court on the government's motion, and not the defendant's motion, does not appear to be a material distinction that Simmons and its progeny in this Circuit has recognized and the defendant has not identified any case suggesting otherwise.    Since Simmons was concerned with the defendant's "Hobson's choice" of having to waive one right to assert another, Simmons, 390 U.S. at 391, it is this essential issue that remains here.

Bulger's proffer suffers not only from a lack of sufficient detail, but there has been no showing that the alleged promise of immunity was made by a person with actual authority to make it or that Bulger detrimentally relied on that promise as required under Flemmi.    Although Bulger attacks the integrity of the affiant in the Margolis Aff., D. 855 at 11, he has now

---

[9] Indeed, on the eve of Stephen Flemmi's trial earlier in this case, the government took the same position in a motion in limine in regard to Flemmi's pre-trial testimony regarding an alleged grant of immunity.  D. 528 at 7 n.4; see also United States v. Salemme, 91 F. Supp. 2d 141, 175 (D. Mass. 1999) (reflecting Flemmi's testimony regarding at alleged grant of immunity at pre-trial evidentiary hearings).

repeatedly declined an evidentiary hearing regarding the issue of O'Sullivan's actual authority to make the promise that Bulger alleges and, accordingly, the Margolis Aff. remains unrefuted here. The Court recognizes that as prosecutors are empowered to pursue prosecution, they are also empowered to forbear prosecutions.  Flemmi, 225 F.3d at 86.  Whether a government official had the authority to bind the United States to an informal promise of immunity is a fact-based inquiry, requiring the defendant to demonstrate that the promisor acted with the authority of the federal government.  Even if, as Bulger contends, the DOJ guidelines proffered by the government in support of its argument that O'Sullivan had no authority to grant any such agreement do not have the force of law, D. 855 at 3-6, the relationship between the United States and its agents are not entirely governed by statutes and regulations that have the force of law. See Flemmi, 225 F.3d at 85 (noting that "[a]ctual authority [to bind the government] may be conferred either expressly or by necessary implication").  Thus, whether or not the DOJ guidelines have the force of law, they, at a minimum, bear upon the principal-agent relationship between the government and DOJ attorneys during the relevant period and suggest a basis for questioning O'Sullivan's actual authority to grant Bulger the scope of immunity he claims here.

However, even putting aside the issue of actual authority, there is no evidence in the record, and Bulger has not proffered any, that he detrimentally relied upon any such promise, even if it was made.  There is no suggestion that Bulger took any action to his disadvantage in reliance upon this promise.  He did not, for example, waive any constitutional right, incriminate himself or offer to plead guilty in reliance on same.  See, e.g., United States v. Carter, 454 F.2d 426, 427 (4th Cir. 1972).  To the contrary, as alleged by the government, D. 611 at 2, Bulger fled upon word of the charges to come in this matter and remained at large until his arrest in June 2011.  Id.

For all these reasons, to the extent that the March 4th Memo & Order left open the entirety of Bulger's claimed immunity, reserving on the issue of historical immunity upon further submission of the parties, the Court concludes, on the present record, that there has been an insufficient proffer that any such promise of immunity was made by a person with actual authority to make it or that Bulger detrimentally relied upon such promise, or that any such agreement was enforceable as a matter of law.   Moreover, such alleged agreement, if characterized as prospective, historical or ongoing, is not a defense to be presented at trial to the jury.

        *d)*       *Preventing Bulger from Arguing the Immunity Issue at Trial Does Not Violate His Rights Under the Sixth Amendment*

As referenced above, Bulger argues that if the Court does not permit him to raise the immunity issue at trial, such preclusion would deprive him of his Sixth Amendment right to present a defense.  First, there is nothing about this ruling or the March 4th Memo & Order that bars Bulger from choosing to take the stand in his own defense.  D. 832 at 11 n.7.  Second, the constitutional guarantee that Bulger invokes is not boundless.  See United States v. Reeder, 170 F.3d 93, 108 (1st Cir. 1999) (noting that the Sixth Amendment does not grant defendant "unfettered" right to offer inadmissible evidence) (quoting Montana v. Egelhoff, 518 U.S. 37, 42 (1996)).  In addition, where a defendant has failed to make a sufficient evidentiary proffer to support a defense, the Court may prevent the defendant from presenting that defense without violating the defendant's constitutional rights.  See United States v. Roszkowski, 700 F.3d 50, 54-55 (1st Cir. 2012) (affirming trial court's refusal to compel testimony in support of entrapment defense, where defense was otherwise "tenuous" in light of a "speculative proffer").  As discussed above, the Court has determined that the issue of immunity is not an issue for the jury; evidence of immunity would therefore not be relevant at trial.  See Fed. R. Evid. 401, 402.

24

For all the reasons stated here and previously in the March 4th Memo & Order, D. 832, the Court DENIES Bulger's motion to vacate and ALLOWS the government's motion to preclude Bulger from presenting his alleged claim of immunity to the jury as a defense.

> e)   *Bulger May Still Assert Defenses of Entrapment by Estoppel and Public Authority*

Even though the Court has concluded that the existence and enforceability of immunity agreements are to be found by the Court, there are related defenses which Bulger could present to the jury.  Even as defense counsel has recognized, the defenses of public authority[10] and entrapment by estoppel[11] are "branch[es] of the immunity tree."  D. 827 at 18.  At the April 26th hearing, defense counsel did not, when asked, assert any factual or legal impediments to raising these defenses, but noted that the facts drive the defendant's defense and that he was consequently pressing his immunity defense.

Although Bulger has indicated, as recently as the April 26th hearing, that he does not intend to raise either defense, the Court notes that no deadline for notice of a public authority

---

[10] To prevail on the defense of public authority, the defendant must demonstrate that:  (1) the defendant engaged in the alleged criminal conduct at the behest of a government official; (2) the government official had the power to authorize the action; and (3) the defendant reasonably relied on the government official's authorization.  See United States v. Cao, 471 F.3d 1, 4 (1st Cir. 2006); see also United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994).  The Court notes that to prevail on a public authority defense requires a showing that the authorizing government official had actual authority to sanction illegal conduct.  See United States v. Holmquist, 36 F.3d 154, 161 n.6 (1st Cir. 1994) (rejecting defense of "apparent public authority" and finding that only those with "actual public authority" could lawfully sanction illegal conduct); see also Baptista-Rodriguez, 17 F.3d at 1368 n.18 (observing that "the validity of this defense depends on whether the government agent in fact had the authority to empower the defendant to perform the acts in question").

[11] To prevail on the defense of entrapment by estoppel, the defendant must demonstrate that:  (1) a government official informed the defendant that certain conduct was legal; (2) the defendant engaged in what otherwise would be criminal conduct; (3) the defendant's engagement in that conduct was in reasonable reliance of the official's representation; and (4) prosecution for the alleged conduct would be unfair.  United States v. Smith, 940 F.2d 710, 715 (1st Cir. 1991); see also United States v. Lemieux, 550 F. Supp. 2d 127, 133 (D. Me. 2008).

defense under Fed. R. Crim. P. 12.3 has been set in this case.  Accordingly, the Court sets May 6, 2013 as the deadline for the defendant to serve and file notice of same in accordance with Rule 12.3.

### B.        Motion to Vacate Discovery Order

#### *1.      The Applicable Legal Standard for Discovery in Criminal Cases*

Bulger's right to discovery from the government originates from specific sources:  his constitutional right to exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972); Fed. R. Crim. P 16; and the Jencks Act, codified at 18 U.S.C. § 3500.  <u>United States v. Griebel</u>, 312 Fed. Appx. 93, 96 (10th Cir. 2008) (observing that "discovery obligations . . . are defined by Rule 16, <u>Brady</u>, <u>Giglio</u>, and the Jencks Act"); <u>see also</u> <u>United States v. Presser</u>, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988) (noting that "in most criminal prosecutions, the <u>Brady</u> rule, Rule 16 and the Jencks Act exhaust the universe of discovery to which the defendant is entitled").

<u>Brady</u> and <u>Giglio</u> entitle criminal defendants to exculpatory evidence that is material to guilt.  <u>Giglio</u>, 405 U.S. at 154; <u>Brady</u>, 373 U.S. at 87.  Materiality for purposes of <u>Brady</u> is "traditionally assessed from the vantage point of appellate review."  <u>United States v. Pesaturo</u>, 519 F. Supp. 2d 177, 189 (D. Mass. 2007).  Courts consider evidence material if its disclosure has a "reasonable probability" of affecting the outcome at trial.  <u>United States v. Avilés-Colón</u>, 536 F.3d 1, 20 (1st Cir. 2008).

Rule 16(a)(1)(e) states in relevant part that: "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents . . . if the item is within the government's possession, custody, or control and the item is material to preparing the defense."  The materiality standard for Rule 16 "essentially tracks the <u>Brady</u> materiality rule,"

United States v. LaRouche Campaign, 695 F. Supp. 1290, 1306 (D. Mass. 1988), though some courts have found that materiality under Rule 16 is broader than under Brady.   Pesaturo, 519 F. Supp. 2d at 189; see also United States v. Poulin, 592 F. Supp. 2d 137, 143 (D. Me. 2008) (noting that "unlike the Government's Brady obligation to disclose exculpatory evidence that is material either to guilt or to punishment, Rule 16 requires the disclosure of inculpatory and exculpatory evidence alike") (internal citation and quotation marks omitted) (citing United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998)).   In addition, other courts have focused on the usefulness of the evidence to defending the case including the potential for "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." Pesaturo, 519 F. Supp. 2d at 190-91 (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)); see also United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) (observing that "evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense").   However, "the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense." United States v. Chimera, 201 F.R.D. 72, 76 (W.D.N.Y. 2001) (citations omitted).  Defendants bear the burden to make a "prima facie showing of materiality." United States v. Carrasquillo-Plaza, 873 F.2d 10, 12 (1st Cir. 1989).

Many of Bulger's complaints about the alleged failure of production by the government are that the defense and the Court have been forced to rely on the government's representations about its fulfillment of its discovery obligations.  D. 848 at 39-42, 45.  However, much of this reliance is inherent in these obligations falling on the government,  Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987); Ferrera v. United States, 456 F.3d 278, 293 (1st Cir. 2006); United States v.

Brooks, 966 F.2d 1500, 1505 (D.C. Cir. 1992), and the penalties, if noncompliance with these

obligations is found, also fall on the government.  See Ferrera, 456 F.3d at 293; United States v.

Jones, 620 F. Supp. 2d 163, 178 (D. Mass. 2009).

> 2.    *The Court Will Not Vacate the December 6, 2012 Order Regarding Bulger's Discovery Requests and Denies the Renewal of Certain of those Requests*

The Court denies Bulger's motion to vacate the December 6, 2012 Order, which granted

in part and denied in part his discovery requests for a number of reasons.  First, Bulger overstates

the scope of the Court's denial of his requests concerning the issue of the immunity.  At the time

of Bulger's original discovery motion and the Court's order regarding same, the government had

not yet filed its Rule 12(b)(2) motion in which it contended, among other things that Bulger's

claimed immunity was not a defense for trial, D. 819, although the Court was aware of Bulger's

expressed intention to press same as a defense at trial.  D. 768.  Nonetheless, the Court did not

reject all of Bulger's requests in respect to this matter, but instead limited the broadly framed

discovery requests in Requests 1-4 regarding certain correspondence about Bulger and

associates, including members of the so-called Winter Hill Gang to "correspondence reflecting

the existence of any agreement, formal or informal, acknowledging or memorializing the

conferral of immunity on defendant by the U.S. Government or its authorized agents for any pas

or prospective crimes for which defendant was responsible (or an affirmance that no such

correspondence exists)."   Docket entry, 12/6/2012.   Since this ruling, the government has

represented that no such documents exist to support Bulger's claim of immunity.  D. 859 at 1; D.

785 at 8-9.

To exceed what the Court previously allowed as to this category of discovery requests

would be to go beyond what the parameters of what Giglio, Brady, the Jencks Act and Rule

16(a)(1)(E) require.  For the same reason, the Court does not see fit to vacate the other rulings concerning evidence alleged to be related to the immunity issue where the Court determined that such other requests were moot where production had already been made (Request 10) or production as to potentially exculpatory evidence or evidence suggesting the existence of an immunity agreement had been produced (Request 11) or disclosure of such relevant and unprivileged information had been produced (Request 19 to 23).  The Court did deny the request regarding an allegedly improper relationship between former FBI Special Agent Daly, an agent that Bulger alleges was the case agent on the race fix case, D. 848 at 19, and an informant on the grounds that the "[d]efendant has shown no conceivable relationship between such information, if it exists, and this case" (Request 25).  Docket entry, 12/6/2012.  However, nothing in the renewed motion for discovery provides a further basis to link such an alleged relationship to this case or to suggest that the requested information would be discoverable under Fed. R. Crim. P. 16(a)(1)(E) or as exculpatory evidence.  Finally, to the extent to which Bulger still complains about the failure of the government to produce the race fix memorandum in this case, counsel's representations at the hearing reflect that the defense team now has a copy of the memorandum and the necessity for an ordering compelling same is now moot.

The same is true with Bulger's new request for the names and service dates of certain DOJ officials.  Bulger does not explain how such information constitutes exculpatory evidence or bears upon the credibility of any likely government witnesses or how it is otherwise discoverable save for the contention that it is material to his alleged defense of immunity.  D. 848 at 6.  However, even as Bulger contends that such a broad request bears upon his alleged immunity, the Court concludes that the previous line drawn by this Court in the December 6, 2012 Order regarding the production of correspondence reflecting, acknowledging or

memorializing any informal or formal agreement is the right line given the defendant's allegations and the parameters of the government's discovery obligations and, accordingly the Court denies this further request.

Although the renewed motion for discovery, D. 848, focuses on discovery material to the alleged defense of immunity, since Bulger seeks to vacate the December 6, 2012 Order regarding his November 2, 2012 motion in toto, the Court now briefly addresses the portions of that order that concerned Giglio information regarding John Martorano, Stephen Flemmi and Kevin Weeks. As an initial matter, the Court allowed much of the requests for impeachment information as to these key government witnesses expected to testify at trial and/or the government indicated that it had produced or was going to produce same. To the extent that the Court denied such requests, it was largely in regard to the production of such information in a certain form (i.e., PSRs) and not a denial that the government would have to produce the substance of any Brady or Giglio information contained therein. This Court sees no reason to revisit this issue.

For all these reasons and in the absence of a showing that the government has failed to produce the requisite discovery as obligated or previously ordered, the Court declines to vacate the Court's December 6, 2012 Order or allow the renewed motion for discovery.

V.      **Conclusion**

For the above reasons, Bulger's motion for discovery, D. 848, and his motion to vacate, D. 856, are DENIED. The government's motion to preclude Bulger from arguing his claim of immunity to the jury as a defense at trial, D. 819, is ALLOWED. The Court sets May 6, 2013 as the deadline for the Defendant to serve and file notice under Fed. R. Crim. P. 12.3.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge