UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES                      )
                                   )
V.                                 )   Crim. No. 99-10371-DJC
                                   )
JAMES J. BULGER                    )
_____)

# DEFENDANT'S RESPONSE TO GLOBE NEWSPAPER COMPANY, INC.'S MOTION FOR EXEMPTION FROM SEQUESTRATION ORDER

The defendant hereby files its response and opposition to the Globe Newspaper Company, Inc.'s ("Globe") motion to exempt noticed defense witnesses Shelley Murphy and Kevin Cullen from any potential sequestration order in this case. (ECF Dkt. 965). The defense is likely to call Ms. Murphy and Mr. Cullen as witnesses at trial. They have obtained statements from crucial government witnesses, including Kevin Weeks, Stephen Rakes, and Thomas J. Foley. The defendant cannot at this point predict how these government witnesses will testify. Consequently, any witnesses who could impeach their testimony must not be permitted to be present in court during the trial.

This is not a case of unconstitutional discrimination against a certain media outlet as the Globe's motion posits. The

common thread among the cases cited by the Globe on this point is an exclusionary effect on a news organization as a whole.[1] In Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir. 1986), and McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir. 1951), the First Circuit rejected attempts to withhold information from one news outlet while permitting another similarly situated organization access to the same material. Westinghouse Broadcasting Co., Inc. v. Dukakis, 409 F.Supp. 895, 897 (D.Mass. 1976), similarly repudiated efforts by local government to exclude only one television station from covering city council events. In contrast to these cases, the Globe as an entity would not be denied access to the trial if Ms. Murphy and Mr. Cullen were sequestered from the trial along with other witnesses. The Globe could still be ably represented at this trial by a number of other reporters who have experience covering this case.[2] Nor would a single newspaper be granted exclusive access to the case if these witnesses were sequestered. There is therefore no risk that their sequestration would harm the public by allowing a sole news outlet to shape the presentation of the trial to the public. Anderson, 805 F.2d at 9.

---

[1] The only case cited by the Globe that concerns an individual reporter is Sherill v. Knight, 569 F.2d 124 (D.C. Cir. 1977). The constitutional error in this case stemmed from the Secret Service's failure to adequately explain the standards governing denial of White House press passes and affording those denied sufficient procedure. As such, it is inapposite to the instant case.

[2] Globe reporters Milton J. Valencia, Martin Finucane, Travis Andersen, and John R. Ellement, for example, have each authored multiple articles regarding this case over the past few months alone.

The Globe's motion also overstates the consequence to the public if these two specific reporters are sequestered like the rest of the witnesses. In addition to the four other Globe staff members, a multitude of national and local media entities have been covering and reporting on this case in considerable detail. Thus, the Globe's contention that the sequestration of Ms. Murphy and Mr. Cullen "would threaten the public's understanding of events occurring at trial..." is without merit. ECF Dkt. 965, ¶10. It presents no reason to treat Ms. Murphy and Mr. Cullen differently from other expected impeachment witnesses who are subject to witness sequestration.

That the information to which Ms. Murphy and Mr. Cullen will be called to testify does not originate from a confidential source further undercuts the Globe's First Amendment arguments. The Globe argues that the defendant "would have to overcome significant constitutional barriers" to call these reporters as witnesses at trial. ECF Dkt 965, ¶9. Such barriers, however, primarily exist when a party is seeking to compel disclosure of confidential information from a journalist. See e.g., In re Request from the United Kingdom Pursuant to the Treaty Between the Gov't of the United States and the Gov't of the United Kingdom on Mut. Assistance in Criminal Matters in the Matter of Dolours Price, 2013 WL 2364165 at *1 (1st Cir. May 31, 2013) (interviews at issue were kept in secure section of university

library, accessible only for academic research, and subject to strict confidentiality agreements); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) ("We have been referred to no authoritative sources demonstrating or explaining how any chilling effect could result from the disclosure of statements made for publication without any expectation of confidentiality."). The statements of the government witnesses subject to impeachment at trial have been published by Ms. Murphy and Mr. Cullen in widely-circulated newspapers and popular books. Rather than an expectation of privacy, both the government witnesses and the reporters hoped for and expected their wide-spread dissemination. Accordingly, the Globe has not made out a First Amendment challenge that would outweigh the defendant's competing Fifth and Sixth Amendment interests to a fair trial, compulsory process, and effective confrontation of witnesses. LaRouche, 841 F.2d at 1182.

JAMES J. BULGER
By His Attorneys,

CARNEY & BASSIL

*J. W. Carney, Jr.*
J. W. Carney, Jr.
B.B.O. # 074760

4

*Henry B. Brennan*
Henry B. Brennan
B.B.O. # 634036

Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: June 5, 2013

## Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

*J. W. Carney, Jr.*
J. W. Carney, Jr.