COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CRIMINAL ACTION
Nos. 99518-24

COMMONWEALTH

vs.

JOHN C. SALVI III

## MEMORANDUM OF DECISION AND ORDER ON COMMONWEALTH'S MOTION FOR ORDER LIMITING ALL PARTICIPATING ATTORNEYS' EXTRAJUDICIAL COMMUNICATIONS WITH MEDIA[1]

The defendant, John C. Salvi III, faces two indictments charging him with murder and five indictments for armed assault with intent to murder. On July 21, 1995, the Commonwealth moved this court to impose an order limiting the attorneys involved in the prosecution and defense of this case from extrajudicially communicating with, or disseminating information to, the media on any matters relating to this case. The Commonwealth contends that

---

[1] The motion is entitled "Commonwealth's motion to prohibit defense counsel from making extrajudicial statements." Its first sentence requests "an order precluding counsel for the Commonwealth or the defense from disseminating any information to the media outside of the courtroom or making any extrajudicial statements pertaining to this case." Accordingly, this court's memorandum of decision and order is directed towards all attorneys for the Commonwealth and the defendant participating in this case.

such an order is necessary to safeguard all parties' rights to a fair trial and to protect society's interests in the fair administration of justice and the integrity of judicial processes. On July 28, 1995, this court warned the participating attorneys that they must adhere to the applicable ethical rules regarding extrajudicial statements. Oral arguments by the parties on this motion were heard on October 24, 1995; the defendant's attorneys oppose the motion.

For the reasons set forth herein, and as specified in the Order contained herein, the Commonwealth's motion is **ALLOWED**.

## DISCUSSION

A defendant in a criminal proceeding has the constitutional right to have his innocence or guilt resolved on admissible evidence, by fair procedures, and in a tribunal that is not influenced by public sentiment or outcry. See U.S. Const. amend. VI; Mass. Decl. Rights art. 12; Gentile v. State Bar, 111 S. Ct. 2720, 2742 (1991); Sheppard v. Maxwell, 384 U.S. 333, 350-351 (1966); Patterson v. Colorado, 205 U.S. 454, 462 (1907); Commonwealth v. Morrissey, 351 Mass. 505, 513 (1967). Protection of this right requires some limits on the kinds of information that can be disseminated to the public before trial--particularly where the trial is to be by jury. Sheppard v. Maxwell, 384 U.S. at 360-361. See also ABA Model Rule 3.6 cmt. Conversely, attorneys, the

public, and the press have countervailing rights under the First Amendment to the United States Constitution and article 16 of the Massachusetts Declaration of Rights.[2]

The First Amendment and article 16 provide the right to all persons, including attorneys, to engage in free speech and free press. Additionally, the public and the government have an interest in ensuring the fair administration of justice and the basic integrity of judicial processes. Sheppard v. Maxwell, 384 U.S. at 350-352. The unfettered dissemination of information having legal consequences and information about legal proceedings is vital to the protection of this important societal interest. Id.; ABA Model Rule 3.6 cmt. In some cases, however, certain extrajudicial statements by participating attorneys are coupled with, and amplified by, extensive pretrial and trial publicity that can impair the integrity of the very judicial processes which the press seeks to maintain. Trial courts have great discretion in handling instances of asserted prejudicial publicity. Commonwealth v. Jackson, 376 Mass. 790, 799 (1978).

---

[2] "The constitutional principles that govern [my] consideration of the [motion] are well established and are not significantly different under art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments than under the First Amendment to the Constitution of the United States." Care and Protection of Edith, No. 06910, at 3 (Mass. Sup. Jud. Ct. Jan. 17, 1996), citing Krebiozen Research Found. v. Beacon Press, Inc., 334 Mass. 86, 96-97, cert. denied, 352 U.S. 848 (1956).

When free speech claims impinge upon the right to a trial by an impartial jury, asserted First Amendment interests must yield to the "most fundamental of all freedoms," the right to a fair trial for the accused. Estes v. Texas, 381 U.S. 536, 540 (1965). In such cases, to guarantee the right to a fair trial, the Supreme Court has placed an affirmative duty on trial courts to guard against prejudicial pretrial publicity. Sheppard v. Maxwell, 384 U.S. at 360-363; Gentile v. State Bar, 111 S. Ct. at 2744-2745. As such, a trial judge either upon motion or sua sponte may act to ensure that the right to a fair trial and the fair administration of justice is not abridged by dissemination of prejudicial information to the media by attorneys. This duty can include the obligation to place limits on free speech rights.[3] "An injunction that forbids speech activities is a clear example of a prior restraint. . . . Any attempt to restrain speech must be justified by a compelling state interest to protect against a serious threat of harm." Care and Protection of Edith, No. 06910, at 3 (Mass. Sup. Jud. Ct. Jan. 17, 1996).

Ordinarily, speech restrictions will withstand constitutional

---

[3] Of course, any court order attempting to prohibit the media from publishing or broadcasting accounts of the public proceedings would violate the First Amendment. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 570 (1976). In the instant case, the speech restriction is sought against all participating attorneys, not the media.

scrutiny only if they are limited to prohibiting that speech which creates a "clear and present danger" of threatening some substantial governmental interest unrelated to suppression of expression. See Brandenburg v. Ohio, 395 U.S. 444, 448-449 (1969). An exception to this rule governs the free speech of attorneys in certain settings because attorneys are held to a higher standard of conduct than are lay persons. United States v. Cutler, 58 F.3d 825, 837 (2d Cir. 1995). In particular, due to the unique role and special position of attorneys participating in a pending criminal proceeding, and the prejudicial effect which their extrajudicial statements could have on the trial's fairness, their free speech rights can be curtailed. See Gentile v. State Bar, 111 S. Ct. at 2743-2745; Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 564 (1976); Sheppard v. Maxwell, 384 U.S. at 360-363.

The issue raised by the Commonwealth's motion brings to a climax the irreconcilable conflict between the rights to free press and to a fair trial. A determination is required that has no clear precedent in Massachusetts. The decisive question is what test should be applied by a court called upon to curtail the extrajudicial statements of participating lawyers about an impending proceeding that are apt to affect the fairness of the proceeding. Some guidance is provided by the ethical rules of conduct for attorneys in Massachusetts.

A. <u>Ethical Rules Governing Attorneys</u> and <u>Trial Publicity</u>

Pursuant to the Massachusetts Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, it is unethical for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice." S.J.C. Rule 3:07, DR 1-102(A)(5). In the instant case, the Commonwealth claims that all parties' rights to a fair trial and the fair administration of justice will be affected by the extrajudicial statements of defense counsel. The conduct of attorneys in matters involving trial publicity is regulated by S.J.C. Rule 3:07, DR 7-107. This rule contains specific guidelines for the extrajudicial dissemination of information during the time between the issuance of an indictment and the commencement of a criminal trial, see DR 7-107(B)(1)-(6), and during the empanelment and trial of a criminal matter, see DR 7-107(D). No reported Massachusetts appellate decision either decides the rule's constitutionality or discusses its proper interpretation and application. In other jurisdictions, however, analogous versions of the rule have been found to be overbroad and constitutionally defective as applied in attorney speech-restriction cases.[4]

---

[4] See, e.g., Hirschkop v. Snead, 594 F.2d 356, 371 (4th Cir. 1979) (holding that DR 7-107(D)'s prohibition of any statements about "other matters that are reasonably likely to interfere with a fair trial" is unconstitutionally broad and

Although no qualification is stated in S.J.C. Rule 3:07, DR 7-107(B), it is obvious from a reading of the entire rule that its drafters were concerned with speech for publication that is "*reasonably likely* to interfere with a fair trial," as stated in subsection (D). Id. (emphasis added). Therefore, this court treats that qualification as implicit in subsection (B). A review and analysis of S.J.C. Rule 3:07, DR 7-107(B) and (D) under this qualification leads me to conclude that the rule's application in this case results in an unconstitutionally overbroad and vague regulation that infringes on the attorneys' First Amendment rights. Accordingly, I rule that S.J.C. Rule 3:07, DR 7-107(B) and (D) shall not be applied to circumscribe the attorneys' conduct in relation to trial publicity or to resolve the motion at issue.

---

vague); Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 249, 254-255 (7th Cir. 1975) (holding that the standard of DR 7-107(D), "if there is a reasonable likelihood such dissemination will interfere with" proceeding, was overbroad, and imposing new standard of "serious and imminent threat of interference with the fair administration of justice" to (B) and (D)). cert. denied, 427 U.S. 912 (1976); Cf. United States v. Garcia, 456 F. Supp. 1354, 1356-1357 (D. P.R. 1978) (holding disciplinary rule unconstitutional for prohibiting dissemination of information which "*may* interfere with a fair trial or otherwise prejudice the administration of justice"); contra United States v. Cutler, 58 F.3d 825, 835 (2d Cir. 1995) (applying local disciplinary rule preventing attorney communications "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice"); but cf. Gentile v. State Bar, 111 S. Ct. at 2740, 2744-2745 (declining to apply "clear and imminent danger" standard to restrictions on attorney free speech).

Proposed S.J.C. Rule 3:07, MR 3.6, a modified version of ABA Model Rule 3.6, states:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a <u>substantial likelihood of materially prejudicing</u> an adjudicative proceeding in the matter. (emphasis supplied).[5]

The qualification set forth in Proposed S.J.C. Rule 3:07, MR 3.6(a), provides a more precise standard and, therefore, greater constitutional protections for all parties than does S.J.C. Rule 3:07, DR 7-107(B) and (D). In <u>Gentile</u> v. <u>State Bar of Nevada</u>, 111 S. Ct. 2720, 2744-2745 (1991), the Supreme Court held that a Nevada disciplinary rule containing a standard identical to that of Proposed S.J.C. Rule 3:07, MR 3.6(a), was "a constitutionally permissible balance" and did not violate the First Amendment. See <u>id</u>. at 2737-2738 (quoting the ethical rule at issue). In resolving

---

[5] See Proposed Model Rule 3.6(a), as reprinted in Mass. L. Weekly, "Proposed Rules of Professional Conduct," at 26, 29 (March 6, 1995). The Supreme Judicial Court has announced that it intends to adopt the Proposed Model Rules imminently. See Mass. L. Weekly, "S.J.C. To Adopt ABA Rules of Professional Conduct," at 1 (March 6, 1995) ("The SJC said it was approving the rules only <u>in principle</u> at this point and will finalize the rules after receiving comments from 'all interested persons and organizations.'") (emphasis in original); Mass. L. Weekly, "Criminal Bar Critical of Ethical Rules Changes," at 28 (May 8, 1995) (stating that the latest extension granted by S.J.C. for public comment on the proposed rule changes was July 14, 1995).

this motion, therefore, this court shall apply the standard of "substantial likelihood of material prejudice" as set forth in Proposed S.J.C. Rule 3:07, MR 3.6(a),[6] and approved of in Gentile v. State Bar, 111 S. Ct. at 2744-2745.

### ANALYSIS

To decide the Commonwealth's motion for a limiting order on the speech of the attorneys participating in this case, this court must conduct a four-pronged analysis. First, this court must determine the nature and extent of pretrial news coverage. Nebraska Press Ass'n v. Stuart, 427 U.S. at 562. Of course, "[t]he mere existence of pretrial publicity itself is not sufficient" to deprive a defendant of a fair trial by an impartial jury. Delle Chiaie v. Commonwealth, 367 Mass. 527, 532 (1975). See also Nebraska Press Ass'n v. Stuart, 427 U.S. at 554.

Second, this court must decide whether any extrajudicial statements by the attorneys to the media combine with the publicity surrounding the case to create "a substantial likelihood of materially prejudicing" the underlying proceeding. If such a finding is made, a trial court is constitutionally empowered and

---

[6] In applying the narrow and specific qualification of Model Rule 3.6(a), the attorneys are not now subject to a new burden that imposes a more restrictive standard. This narrow qualification was implicitly included in the overbroad provisions of S.J.C. Rule 3:07, DR 7-107, which counsel were already obligated to follow.

duty bound to consider imposing some measure that will alleviate the risk of prejudice. See Sheppard v. Maxwell, 384 U.S. at 361-362. A proceeding can be materially prejudiced if the potential pool of jurors is polluted by prejudicial publicity.[7] Id.; Nebraska Press Ass'n v. Stuart, 427 U.S. at 554-555. An "order seeking to enjoin speech must be based on detailed findings of fact that (a) identify a compelling interest that the restraint will serve . . . ."[7] Care and Protection of Edith, No. 06910, at 4 (Mass. Sup. Jud. Ct. Jan. 17, 1996).

Third, in the face of a substantial likelihood of material prejudice to the proceedings, this court can consider exercising its discretion to impose the remedial measure of restricting certain extrajudicial statements and dissemination of information to the media by the attorneys in this case. Sheppard v. Maxwell, 384 U.S. at 360-362.

Before imposing such an order, however, this court must first determine whether any less restrictive alternative exists which would be "likely to mitigate the effects of unrestrained pretrial

---

[7] The Proposed S.J.C. Rule 3:07, MR 3.6, does not include subsection (b) of ABA Model Rule 3.6, that detailed which "statement[s] referred to in paragraph (a) ordinarily [are] likely to have such an effect . . . ." See ABA Model Rule 3.6 (b)(1)-(6). The effect of this omission is to allow the trial court broader discretion to decide what extrajudicial statements can be found under subsection (a) to "have a substantial likelihood of materially prejudicing an adjudicative proceeding."

publicity," and then impose any such alternative in place of the speech restriction. Nebraska Press Ass'n v. Stuart, 427 U.S. at 562. See also Care and Protection of Edith, No. 06910, at 4 (Mass. Sup. Jud. Ct. Jan. 17, 1996) ("Any order seeking to enjoin speech must . . . (b) demonstrate that no reasonable, less restrictive alternative to the order is available."). In criminal proceedings, such alternatives often may not preclude the imposition of attorney speech restrictions because the trial court has an overriding obligation to "prevent . . . prejudice at its inception," rather than to wait until after the fact. Sheppard v. Maxwell, 384 U.S. at 363. Nevertheless, a court should determine "how effectively a restraining order would operate to prevent the threatened danger." Nebraska Press Ass'n v. Stuart, 427 U.S. at 562.

Fourth, and finally, any restraining order must be specific and narrowly tailored to provide clear guidance regarding the types of speech for which an individual may be punished. See Smith v. Goguen, 415 U.S. 566, 572-573 (1974); Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972). See also Care and Protection of Edith, No. 06910, at 4 (Mass. Sup. Jud. Ct. Jan. 17, 1996) ("Any limitation on protected expression must be no greater than is necessary to protect the compelling interest that is asserted as a justification for the restraint. See Ottaway Newspapers, Inc. v.

Appeals Court, 372 Mass. 539, 547-548 (1977); Commonwealth v. Dennis, 368 Mass. 92, 99 (1975).").

1. Nature and Extent of Publicity

This court's findings are based upon my personal and continuing observation and review of the attention this case receives in the print and electronic media, and the parties' submissions in support of or opposition to this motion.[8]

This case has been the subject of extensive and pervasive national and local media publicity since the day when the crimes detailed in the indictments occurred. Articles and stories too voluminous to recount have been widely published and electronically broadcasted, prominently situated, concerning the case. Extrajudicial interviews with attorneys involved in this case, and numerous statements written by the defendant, have also been published or broadcasted. This intense media coverage has occurred before and after every judicial proceeding involving this case. The media attention has been constant even during times when no matters before the court were imminent.

The circumstances surrounding this case involve matters of a very public and highly emotional nature which are quite different

---

[8] Evidently, no factual issue exists as to the extrajudicial communications or information attributed to counsel in these documents.

from other murder cases. This court is reluctant to articulate why the case is so atypical because to do so would cause the same harm the court is trying to avoid. See Nebraska Press Ass'n v. Stuart, 427 U.S. at 555 ("What the judge says about a case, in or out of the courtroom, is likely to appear in newspapers and broadcasts."). Suffice it to say that the notorious crimes alleged in this case have caused, and will cause, great media attention. Additionally, and of equal importance, grave concerns exist among the court and the attorneys as to the safety and protection of the defendant and potential witnesses.

I find that the attorneys' statements and media publicity concerning this case are focused on the defendant and at times are of a sensational nature, involving pejorative characterizations of the defendant, descriptions of the evidence against him, reports of his refusal to comply fully with examinations, the ambiguous results of those tests and interviews, his alleged behavior incidents while in custody or related restraint measures, and criticism of witnesses' credibility. The media attention has been multiplied, and even prompted at times, by the extrajudicial statements and dissemination of information made by attorneys involved in this case. I conclude that the attorneys are regularly communicating extrajudicially with the media and it is reasonably likely they will continue to do so throughout trial.

Many of the attorneys' "[s]tatements were timed to have a maximum impact, when public interest was at its height immediately" (Gentile v. State Bar of Nevada, 501 U.S. at 1079 (Rehnquist, C.J., dissenting in part)) during the defendant's competency hearing and after this court declared him competent. As the defendant has declared his intent to interpose at trial a defense of lack of criminal responsibility because of mental disease or defect, he stands to benefit greatly from any seeds of doubt sown in the public's mind as to his mental condition. Such conduct cannot be tolerated under

> "[t]he theory upon which our criminal justice system is founded: the outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel giving their version of the facts obviously threaten to undermine this basic tenet."

Gentile v. State Bar of Nevada, 111 S. Ct. at 2742.[9]

2. "Substantial likelihood of material prejudice"

---

[9] See also id. at 2745 (Rehnquist, C.J., for the Court) (constitutional "limitations are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found."); id. at 2725 (Kennedy, J.) (providing example of speech that creates a danger of 'imminent and substantial harm' as "an attorney of record . . . releasing information of grave prejudice on the eve of jury selection").

Based on my personal observations and common experiences, I find that the extrajudicial communications by counsel and the extensive publication of such will continue. I conclude further that this publicity and the reasonably likely growth of future publicity couple to create a substantial likelihood of material prejudice to the defendant's right to a fair trial, as the dissemination of such information has a substantial likelihood of material prejudice to the fairness of the proceedings. I also conclude that such publicity presents a substantial likelihood of material prejudice to society's interest in the fair administration of justice and the integrity of judicial processes.

Consequently, the imposition of an order limiting the extrajudicial communications of the attorneys with the media is a viable alternative to be contemplated. After serious and due deliberation, I conclude that the imposition of such an order is the only practical and effective action this court can take to ensure the defendant's right to a fair trial; accord Sheppard v. Maxwell, 384 U.S. at 361-363, even in the face of the First Amendment rights of the parties and others affected by this Order.

3. Alternatives to a speech limitation

Many possible alternatives exist to a restriction on the extrajudicial media communications by attorneys in a criminal

proceeding.[10] The court has fully considered all such measures it could take at this time to ensure a fair trial and finds that there are no practical alternatives presently available which would effectively preclude prejudicial communications. Consequently, considering the nature of this case and the interest it is reasonably likely to generate, a restraining order must issue now in order to ensure a fair trial in the very near future.

Therefore, in my discretion, I conclude that an order limiting certain extrajudicial statements and dissemination of information to the media by the attorneys participating in the litigation of this case is the only practical measure available to prevent the extensive publication of such information from impairing the defendant's right to a fair trial, and society's interests in the fair administration of justice and the integrity of its judicial processes. This court acknowledges the infringement upon First

---

[10] The variety of alternatives to attorney speech restrictions include: (1) continuances; (2) change of venue; (3) jury waiver; (4) a comprehensive and searching voir dire; (5) selection of a jury from a locality outside the area of extensive news coverage; (6) sequestration of a jury; (7) admonitions to a jury to avoid news reports relating to trial; (8) cautionary instructions to media regarding critical matters; (9) emphatic instructions to the jury regarding their sworn duty to decide the case only on the evidence; (10) examination of jurors regarding possible exposure to prejudicial information in trial; (11) exclusion of the public from those hearings during trial held in the absence of a jury; (12) declaring a mistrial; and (13) granting a new trial.

Amendment rights posed by this Order. Having found that a compelling State interest (defendant's right to a fair trial, and society's interest in the fair administration of justice and the integrity of judicial processes) needs protection there is no less restrictive alternative at this time, however, this court has attempted to craft the resulting Order narrowly so as to preserve the defendant's rights to due process and a fair trial, under both the state and federal constitutions, without unreasonably encroaching on the First Amendment rights of other persons.

### ORDER

A.

1. Each attorney subject to this Order SHALL NOT make, release, or authorize release of any extrajudicial statement, written or oral, either at a public meeting or occasion for public reporting or dissemination, or which a reasonable person would expect to result in such dissemination, by any means of public communication, that relates to, concerns, or discusses:
   (a) an opinion as to the defendant's guilt or innocence, sanity or insanity, competence or incompetence, or mental condition, either now or at the time of the alleged crimes;
   (b) the jury, or jurors in this case;
   any extrajudicial statement, written or oral, of the defendant, or comment or opinion thereon;
   (c) any documents, exhibits, testimony, or other materials which have or have not been received in evidence in this case;
   (d) an opinion on the content, nature, substance, or effect of any testimony or evidence;
   (e) the identity, character, testimony, or credibility of any witnesses, prospective or called;
   (f) any opinion on the rulings of this court, or the result of any stage of the proceedings; or
   (g) the events leading up to and culminating in the shooting incidents of December 30, 1994, in Brookline, Massachusetts, and of the shooting incident of December 31, 1994, in Norfolk,

Virginia.

2. This Order SHALL be binding on all attorneys participating in the litigation of this case, both for the Commonwealth and the defendant, and the attorney appointed by this court to act as amicus curiae on the issue of competency. This Order applies also to all attorneys who act as agents, employees, or are under the direction and control of the attorneys of record in this case. No attorney covered by this Order shall avoid its effect by actions which indirectly, but deliberately, bring about a violation of this Order. Contempt powers of this court will be used to ensure compliance. This Order is aimed only at the attorneys described in this paragraph and it SHALL NOT apply to media reporters or to the publication or broadcasting of any matter by such persons.

3. This Order SHALL remain in effect during the pendency of this case, until a trial jury is discharged from further service or disposition without a trial, or until further order of this court.

4. The attorneys SHALL maintain, and use as they deem necessary, their normal rights and opportunities during any hearings, before this or any other court, to communicate their views, file pleadings or memoranda, introduce evidence, examine witnesses, speak or object.

5. This Order SHALL NOT preclude any witness or potential witness from discussing any matter in connection with the case with any of the attorneys representing the defense or prosecution, or any proper representative of such attorney.

6. All proceedings in this action SHALL continue to be open to the public and matters of public record.

7. All attorneys subject to this Order SHALL NOT make any statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. No such statement may be made to mitigate any adverse publicity. Contrast Proposed S.J.C. Rule 3:07, MR 3.6(d).

8. Any attorney subject to this Order who develops a reasonable question as to the propriety of a potential specific

extrajudicial communication is encouraged to seek this court's guidance before making the communication.

B. This Order <u>SHALL NOT LIMIT</u> those attorneys mentioned above from stating any of the following:

1. A factual statement of the defendant's identity, age, residence, occupation, or family status.

2. The fact, time, and place of the defendant's arrest, the identity of the arresting and investigating officers or agencies, and the length of the investigation.

3. The text of the offenses or defense involved, including a brief description of the offenses charged, and any persons involved.

4. The scheduling or result of any stage of the judicial proceeding held in open court before the public or in a public session.

5. A request for assistance in obtaining evidence or the names of potential witnesses.

6. Any information as to any person not in custody who is sought as a possible suspect or witness, or any statement aimed at warning the public of any possible danger either to, or from, such person.

7. From discussing any matter in this case with any other attorney subject to this Order.

Barbara A. Dortch-Okara
Justice of the Superior Court

DATED: February 9, 1996