UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
         v.                   )   Criminal No. 99-10371-DJC
                              )
JAMES J. BULGER,              )
         Defendant.           )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE WEAPONS AND MONEY SEIZED AT THE TIME OF HIS ARREST**

The United States hereby opposes Bulger's untimely motion to exclude evidence "relating to money, firearms and any other weapons" seized from defendant's Santa Monica, California apartment in June 2011, ECF Dkt. No. 1073 (hereinafter, "Def.'s Mtn.").[1] The central premise of Def.'s Mtn. - that the evidence constitutes Fed. R. Evid. 404(b) other bad act evidence – is incorrect, as the guns and money are intrinsic evidence of, among other things:  (a) defendant's flight and intent to evade capture in this case; (b) defendant's consciousness of guilt in this case; and (c) the proceeds and tools of the racketeering enterprise charged in this indictment.  Moreover, in his cross-examination of MSP Colonel Thomas J. Foley (Ret.) and MSP

---

[1]  Bulger was first provided with the California-related evidence in August 2011.  On August 9, 2012, ten months prior to trial, Bulger was given notice that the government intended to introduce evidence related to the guns and cash seized at his apartment in Santa Monica, California.  The Court-imposed deadline for filing motions in limine in this matter was May 23, 2013.  *See* ECF Dkt. No. 850.  Bulger did not move to exclude the guns and cash until June 25, 2013, more than a month after the deadline for motions in limine, and three weeks into the trial.

1

Ballistician Michael Coleman, defendant opened the door to admission of the California evidence by repeatedly suggesting that no guns had ever been found in the defendant's possession or with the defendant's fingerprints. For these reasons, as set forth more fully below, Def.'s Mtn. should be denied.

I. <u>FACTUAL BACKGROUND</u>

Defendant was arrested in Santa Monica, California in June 2011. A search of defendant's residence at the time of his arrest yielded, among other things: (a) over $822,000 in cash, most of which was stashed in a hidden compartment cut into the walls of the apartment; (b) numerous false identifications for both Bulger and his companion; (c) a book titled, "Secrets of a Back-Alley ID Man," regarding how to manufacture false identifications; (d) a book titled, "How to Find Missing Persons-A Handbook for Investigators;" and (e) approximately 30 firearms, many of which were loaded, as well as ammunition, much of which was stashed in hidden compartments in the wall of Bulger's apartment alongside the large sums of cash.

During the cross-examination of Colonel Foley, the following exchange occurred:

> Q. Did you ever find any weapons in James Bulger's home.
>
> A. No.
>
> Q. Did you ever find any masks in James Bulger's home?

>   A.   No.
>
>   Q.   Did you ever find any ammunition or silencers in James Bulger's home?
>
>   A.   No.
>
>   Q.   Did you ever find any items that you brought to court today, or the government brought to court today, that you found in James Bulger's home or on his person?
>
>   A.   No.
>
>               *   *   *
>
>   Q.   And his fingerprints?
>
>   A.   I don't think his fingerprints, no.
>
>   Q.   On any of those weapons?
>
>   A.   Not on these weapons, no.
>
>   Q.   And his DNA was on those weapons, you say?
>
>   A.   No, not on those weapons.

See Tr. 6/13/2013 (Jury Trial, Day Two) at 144-145.[2]

II. ARGUMENT

   a. The guns and cash are intrinsic evidence of flight and consciousness of guilt

Evidence intrinsic to the case does not implicate Fed. R. Evid. 404(b). *See United States v. Candelaria-Silva*, 162 F.3d 698, 703-04 (1st Cir. 1996); *United States v. Manning*, 79 F.3d

---

[2] During the cross-examination of Ballistician Coleman, Bulger's counsel also asked Coleman whether he had tested any of the guns about which he testified for Bulger's fingerprints. *See* Tr. 6/21/13 (Jury Trial, Day Eight) at 31-32.

212, 217 (1st Cir. 1996).  Evidence of flight is probative of a guilty mind and thus intrinsic to a defendant's consciousness of guilt:  "It is well established that flight … may be admitted at trial as bearing upon the guilt of the accused, so long as there is an adequate factual predicate." *United States v. Grandmont*, 680 F.2d 867, 869 (1st Cir. 1982).  This includes evidence that the defendant was in possession of guns and ammunition at the time of his arrest.  *United States v. DeParias*, 805 F.2d 1447, 1454 (8th Cir. 1986), *overruled on other grounds*.  Evidence of weapons seized from defendant at time of his arrest has also been held to establish "more determined flight." *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990); *see also United States v. Graham*, 548 F.2d 1302 (8th Cir. 1977) (no abuse of discretion in district court's decision to admit guns seized from defendant at time of his arrest as evidence of flight).

Here, the fact that Bulger had approximately 30 guns, many of which were loaded, and $822,000 in cash squirrelled away in hand-cut holes in the walls of his apartment is strong intrinsic evidence of his determined flight from justice, his intent not to be captured without a fight, and thus, his consciousness of guilt with respect to the crimes with which he is charged.  In addition, because the government has requested a consciousness of guilt instruction, *see* ECF Dkt. No. 1100, the burden is on

4

the government to prove intentional flight. *See* Pattern Crim. Jury Instr. 1st Cir. 2.10 (2012).

> b. The guns and cash are also intrinsic evidence of the proceeds of the charged criminal enterprise, tools of the trade, and unexplained wealth.

The guns and cash are also admissible as intrinsic evidence of the proceeds of the racketeering enterprise charged in the indictment, tools of the trade, and defendant's unexplained wealth. *See, e.g., United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir. 1989) (upholding admission of "evidence of wealth and lifestyle" of the defendant); *United States v. Aiello*, 864 F.2d 257, 262 (2d Cir. 1988) (allowing "evidence of [the defendant's] lavish lifestyle before and after becoming a fugitive"); *United States v. Tindle*, 808 F.2d 319, 322 (4th Cir. 1986) ("The documentary and financial evidence admitted at trial established that [the defendant] had a lavish lifestyle presumably made possible by his involvement with heroin. . . . To substantiate its contention that [the defendant's] flamboyant lifestyle stemmed from his heroin operation, the government . . . admitted large quantities of cutting material, various drug paraphernalia and two handguns found in the home of one of [the defendant's] lady friends.")

Here, the guns and cash found in Bulger's apartment are highly probative of the profitable nature of the large-scale criminal enterprise charged in the indictment and the "type of

5

protection" defendant felt was needed to protect his operation. *See United States v. Adams*, 759 F.2d 1099, 1108-1009 (3d Cir. 1985); *United States v. Shakur*, 888 F.2d 234, 238 (2d Cir. 1990) (bomb-related equipment was admissible in RICO trial where "there was ample testimony that explosives played a part in the planning and tactics of the 'family's' crimes, and were consistent with the violent ends of the group.").

      c. <u>The guns and cash should also be admitted for narrative integrity and to correct a misimpression created by defendant's cross-examination.</u>

Because the guns were intermingled with the cash and false identifications stashed in various places in defendant's apartment, they should be admitted for narrative integrity and completeness. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) ("the judge would have to make these [admissibility] calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case."). Put differently, the guns and cash are an important element of the story that should not be withheld from the jury. Moreover, as set forth above in Section I, defendant's cross-examination of Colonel Foley and Ballistician Coleman opened the door to admission of the California evidence by creating the misimpression that defendant was never in possession of guns.

    d. <u>Admission of the guns and cash is not unduly prejudicial</u>

Admission of the California guns and cash would not violate Fed. R. Evid. 403.  In this case, the jury has already heard (and will continue to hear) evidence tying defendant to multiple weapons, and will hear graphic evidence of, among other things, defendant's participation in multiple murders.  Accordingly, admitting the guns and cash would not unduly prejudice the defendant like it might prejudice a defendant in a tax case.[3]

III. <u>CONCLUSION</u>

Accordingly, for the reasons set forth above, the government respectfully requests that Def.'s Mtn. be denied.

    Respectfully submitted,

    CARMEN M. ORTIZ
    United States Attorney

By: */s/ Zachary R. Hafer*
    ZACHARY R. HAFER
    BRIAN T. KELLY
    FRED M. WYSHAK, JR.
    Assistant U.S. Attorneys

---

[3] Even if the guns and cash were classified as Fed. R. Evid. 404(b) evidence, they are "specially relevant" to establish defendant's knowledge, absence of mistake, lack of accident, and modus operandi.

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 3, 2013.

                                              */s/ Zachary R. Hafer*
                                              ZACHARY R. HAFER
                                              Assistant U.S. Attorney

Dated: July 3, 2013